Wood, &c. *vs.* State, use of White & Co.

(Decided 24th June, 1886.)

JOHN E. WOOD, MARY J. C. WOOD, his Wife, and BAYARD T. KELLER *vs.* STATE OF MARYLAND, use of W. C. WHITE & Co.

*Depriving owner of Use of a Portable saw-mill—Rule of Damages—Injunction bond—Counsel fees in procuring Dissolution of Injunction.*

The true rule for estimating damages for wrongfully depriving a party of the use and possession of a portable saw-mill for the period of six weeks, is the rental value or hire of the saw-mill, or one of similar capacity, for the like period.

Where the proprietors of a portable saw-mill are wrongfully deprived of the use of the same by an injunction, they may, in an action on the injunction bond to recover damages, in addition to the rental value of the mill, recover as independent losses resulting from the injunction, the amount they paid to their general manager under a subsisting and continuing contract, and to the watchman for taking care of the mill, during the time it was kept idle.

Fees paid by plaintiffs to counsel in procuring the dissolution of an injunction against them, cannot be recovered in a suit on an injunction bond.

APPEAL from the Circuit Court for Alleghany County.

This action was instituted by the appellee against the appellants on an injunction bond, to recover damages alleged to have been sustained by Warren C. White & Co., by reason of an injunction sued out against them by John E. Wood, and wife.   Prior to the 13th of February, 1885, under an agreement with Wood and wife, Warren C. White & Co. had erected and put in operation a steam saw-mill upon the land of Wood and wife, in Garrett County, Maryland, and manufactured a large amount of lumber, which was ready for shipment to market, and were then about to remove their mill and machinery to Bedford County, Pennsylvania, where they had a contract for the manufacture of lumber.   On the 13th of February, 1885, John E. Wood and Mary J. C. Wood, his wife, filed their bill in equity, in the Circuit Court for Garrett County, for an injunction to restrain Warren C. White & Co., from removing their mill, machinery, lumber or other property from the place or places where the same were then located in Garrett County.   A bond in the penalty of a thousand dollars was given by Wood and wife with Bayard T. Keller, as surety, and the injunction was issued as prayed. White & Co. filed their answer to the bill of complaint, and moved to dissolve the injunction.   On the 27th of March, 1885, the Court passed an order dissolving the injunction and dismissing the bill.   On the failure of Wood and wife to perform the conditions of their bond this suit was instituted thereon.

The first, second, third, fourth and fifth exceptions which were taken to the admission of evidence, are omitted.

*Sixth Exception.*—The plaintiff asked the following instructions, which were given :

Wood, &c. *vs.* State, use of White & Co.

1. That if the jury find from the evidence that John E. Wood and Mary J. C. Wood, mentioned in the bond offered in evidence, did not prosecute their writ of injunction therein mentioned, to a successful termination, then they may find for the plaintiffs in such damages, as shall appear from the evidence, that they have actually and necessarily or directly sustained by reason of granting and serving of the said writ of injunction, as set out in the second prayer of the plaintiff and herewith granted, and not exceeding the penalty of said bond.

2. That if the jury find for the plaintiffs, under the instructions contained in the first prayer, then in assessing the damages in this case the jury is at liberty to take into consideration such reasonable counsel fees as the jury may find the plaintiffs to have paid, if any, in obtaining the dissolution of the injunction. And also a reasonable amount for the care of the mill and property of the plaintiffs during the pendency of the injunction, if any; and also such reasonable salary or wages as they may find the plaintiffs were obliged to pay W. C. White, as their manager during said time by reason of subsisting contract, if any; and also such amount of profits as they may find from the evidence were lost to the plaintiffs by reason of their being prevented from operating their mill and machinery during the time in which the said mill and machinery were compelled to lie idle by reason of said injunction, and that as to said last mentioned profits, they are at liberty in estimating the same to give the plaintiffs the benefit of the amount per thousand feet of lumber, which represents the difference between the cost of production and manufacture and the market price, not, however, to exceed the penalty of the said bond.

The defendants offered five prayers, the fourth and fifth of which the Court (Hoffman and Syester, J.,) granted, the others as follows, were rejected:

1. That if the jury find from the evidence that the plaintiffs owned a portable saw-mill at Oakland, Maryland,

and that the injunction mentioned in evidence was served on the plaintiffs as they were about to remove the said saw-mill to a tract of land near Bedford, Pa., and that they had bought timber on said tract at a royalty of $7 per thousand feet, and that they intended to saw said timber with said saw-mill, but were prevented and delayed from doing so for a period of six weeks until said injunction was dissolved, and that when the injunction was dissolved they forthwith removed said mill to said land and sawed all the lumber thereon, and that saw-mills of the same make and in all respects equal to plaintiffs' mill were common articles of merchandise for sale at prices ranging from $1500 to $1800, then the jury cannot include in their verdict as damages the profits plaintiffs might or would have made by sawing said timber during the period they were hindered and delayed from doing so by the operation of said writ of injunction.

2. That if the jury find the facts set forth in the first prayer, then they cannot include in their verdict as damages the profits which the plaintiffs might have made if they had removed said saw-mill to Pennsylvania, and sawed lumber during the time the writ of injunction was in full force.

3. That the jury cannot include as damages in this case fees paid by the plaintiffs to their counsel for services in obtaining the dissolution of the injunction mentioned in the evidence in this cause.

To the granting of the prayers of the plaintiffs, the defendants excepted, as also to the rejection of their own first, second and third prayers. The jury rendered a verdict for the plaintiffs for $916.67 and judgment was entered for the amount. The defendants appealed.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J., for the appellants, and submitted for the appellee.

*Ferdinand Williams*, for the appellants.

*Thomas J. Peddicord*, and *Frederick A. Thayer*, for the appellee.

RITCHIE, J., delivered the opinion of the Court.

This is a suit on an injunction bond; and this appeal relates to the damages allowed for enjoining the removal of plaintiffs' saw-mill from the defendants' land in Garrett County for a period of six weeks. The exceptions taken by defendants are to the rulings of the Court upon the evidence and prayers fixing the standard and the items and method of computing the damages.

It was shown in the testimony, that at the time the injunction was issued, the plaintiffs, with the knowledge of defendants, or some of them, were about to remove the saw-mill to Bedford County, Pa., where they had bought timber on a royalty of $7 per thousand feet, and had orders for the sale of the lumber to be made on the tract.

The removal of the mill to the Bedford County land was delayed by the injunction, as stated, for six weeks, when it was dissolved. The claim of the plaintiffs was that they were entitled to recover as damages the amount of profits they might have made if they had prosecuted their lumber business in Bedford County during that period.

As the mode of ascertaining what those profits would have amounted to, they offered proof of certain items of expense in the making of lumber from the Bedford tract, and the price obtained, at the time when they actually were at work, after the expiration of the six weeks. The items thus specified were, per thousand feet, as follows: for royalty $7, for cutting trees $1, for hauling trees to mill $2.50, for sawing $1.75, for hauling to railroad $1, for loading on cars .25, in all $13.50, as the cost of manufac-

ture, and, as the market price at place of sale, $19.00 per thousand feet.

To the allowance of such profits, and to this method of ascertaining the damage caused by detaining the mill, and the fixing the cost of manufacturing and the price of the lumber by figures prevailing at a time other than the six weeks when the mill was idle and the injunction in force, the defendants excepted. And their contention is, that the true rule of damages under the circumstances of this case was the rental value or hire of a mill of the capacity defendants' mill was shown to be.

It seems to us that to enumerate certain leading items of expense, and thus assign to the saw-mill alone the whole difference between their aggregate and the price obtained, as a profit exclusively attributable to the saw-mill, was incorrect. Profits are contributed to by all and not one only of the various elements which combine to produce them. All the different kinds of work and labor which enter into the manufacture of an article form the source and basis of profits; in this case, the cutting down and hauling done, &c., as well as the sawing by the mill.

The saw-mill alone cannot be deemed the only factor in producing the net result; and we think the mode of computation pursued was calculated to mislead the jury. Moreover, the possible breakage and loss of time incident to practical operations, the cost of freightage to the place of market, the expenses of general supervision, the natural wear and tear, and the use of capital, do not appear as matters of deduction in striking the balance; all, items of consideration in carrying on the lumber business. Nor is it shown that the cost of labor and the price of lumber, articles of fluctuation, were the same during the six weeks the injunction was pending, when the profits are claimed, as they were subsequently. The periods should have been connected in this respect.

But these defects only tend to strengthen the conviction, that the profits claimed are too uncertain, speculative and

contingent in their nature to furnish the true rule of damages in this case, which, in our opinion, should have been the rental value or hire of the saw-mill or one of similar capacity for the period of six weeks. The defendants' question in their fifth exception, "What is the fair hire for such a machine as this is?" should have been allowed. The rental value or hire of a saw-mill with a known capacity is not difficult of ascertainment. Equivalent words to "rental value" or "hire" as applied to a saw-mill would be "the value of the use of the same." Such an inquiry furnishes a more trustworthy and definite guide to ascertain the loss sustained by its enforced idleness than a conjectural estimate of the net results of reducing to lumber an unfelled forest.

A further consideration impelling us to approve this standard, is that the suspension for six weeks does not seem to have prevented the plaintiffs from actually converting their Pennsylvania timber into lumber, and filling their orders, but merely to have delayed them in doing so for that length of time. To fix the damages for such a postponement would involve conjecture and difficulty; while in ascertaining the loss of the hire or working value of the mill for six weeks, as a machine capable of sawing so much lumber per day, substantial and definite *data* are furnished.

The reasoning of the Court in *Abbott vs. Gatch*, 13 *Md.*, 316, and *Middlekauff vs. Smith*, 1 *Md.*, 343, in relation to the rule of damages adopted in those cases, where the operation of flouring mills had been interfered with, we think applicable to this case.

The exception of defendants to the introduction by plaintiffs of proof of the payments of $75 to their manager for the six weeks referred to, under a subsisting contract to pay him $50 per month for his services, and the payment of $37 to the watchman for taking care of their mill during the time it was kept idle, was well taken. These outlays, evidently could not be recovered, for in addition

to recovering profits as from a mill in active operation, for both profits and expenses or losses, could not be recovered. Such items as the outlays mentioned, can be entertained only as independent losses resulting from the injunction. While therefore we think they should have been rejected in a calculation of profits, we think them properly admissible under the standard of damages we have indicated as the proper one, namely, the working value or hire of the mill. They were expenses necessarily incurred, from the subsisting contract and the stoppage of the mill, and are therefore properly allowable in addition to the rental of the mill; otherwise the rental would be impaired to the extent of their amount.

The only other point presented for review is the allowance to plaintiffs of counsel fees paid by them in procuring a dissolution of the injunction.

Whatever may have been held on this subject by other tribunals, we consider that by the United States Supreme Court, and by our own Court of Appeals, it has already been decided that such an expenditure can not be recovered in a suit on an injunction bond. The case of *Wallis, et al. vs. Dilley*, 7 *Md.*, 237, is conclusive. In that case the defendant's prayer was, "That the plaintiffs are not entitled to recover upon the bond in suit for any counsel fees which they or any of them may have proven themselves to have paid for the defence of their interests in the equity proceedings offered in evidence." This language covers fees paid for procuring the dissolution of the injunction. The Court says this prayer should have been granted, and explicitly adds: "Whatever may be the justice of the rule, it seems to be well established that in all matters arising *ex contractu*, the successful party is not entitled to recover the fees which he may have paid to his counsel," and refers to *Day vs. Woodworth*, 13 *Howard*, 363.

The case of *Oelrichs vs. Spain*, 15 *Wallace*, 211, was a case in equity to enforce liabilities for damages arising under certain injunction bonds and to marshal assets.

Wood, &c. *vs.* State, use of White & Co.

In considering the report of the master and the decree of the Court below, the Supreme Court says: "We think that both the master and the Court erred in allowing counsel fees as a part of the damages covered by the bonds." The Court then cites the case of *Day vs. Woodworth*, as was done by this Court in 7 *Md.*, in support of the position, and says: "The point here in question has never been expressly decided by this Court, but is clearly within the reasoning of the case last referred to, (13 *Howard*, 370,) and we think substantially determined by that adjudication. In debt, covenant and assumpsit damages are recoverable, but counsel fees are never included. So in equity cases where there is no injunction bond, only the taxable costs are allowed to the complainant. The same rule is applied to the defendant however unjust the litigation on the other side, and however large the expenses to which he may have been subjected. The parties in this respect are on a footing of equality.    *  .  *    *    *    We think the principle of disallowance rests on a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy."

Being of opinion that there was error in the rulings of the Circuit Court upon the evidence, and in the instructions in favor of the plaintiffs, and that the defendants' rejected prayers should have been granted, we shall reverse the judgment and award a new trial.

*Judgment reversed, and*
*new trial awarded.*

(Decided 15th July, 1886.)