(22 Misc. Rep. 441.)

### DE CAMP v. BULLARD et al.

(Supreme Court, Special Term, Herkimer County.　January, 1898.)

1. PRINCIPAL AND SURETY—LIABILITIES OF SURETY.
    The obligation of a surety must be strictly construed, and cannot be extended to any liability not strictly within the terms of his contract.
2. SUSPENDING INJUNCTION—CONSTRUCTION OF BOND.
    In an action on a bond suspending an injunction, it appeared that plaintiff was owner of a portion of a stream, and that two other persons had bought woodland above on the stream, on supposing that they had a right to use such stream.　Afterwards, they were enjoined in a suit by plaintiff from floating their logs over plaintiff's property, but thereafter the court suspended the injunction for two months, on their giving the undertaking sued on, which was conditioned for the payment of all damages sustained by plaintiff on account of the suspension of the injunction.　*Held*, that the sureties were liable for the fair and reasonable value of the use of said river by their principal.

Action by William S. De Camp, individually and as trustee, against Daniel A. Bullard and others, on an undertaking executed by defendants as sureties.　The jury rendered a verdict for $500 in favor of plaintiff, which, by agreement of the parties, was taken subject to the opinion of the court.　Judgment on the verdict.

C. L. Adams, for plaintiff.
Charles E. Snyder, for defendants.

McLENNAN, J.　The plaintiff, at the times herein mentioned, was the owner of township 7 and the N. ½ of township 1, John Brown's tract, Herkimer county.　About the year 1894, John A. Dix and Edward Thomson, Jr., became the owners of the softwood timber on township 8 in said tract, which adjoins township 7.　The North Branch of Moose river flows through a portion of township 8, and entirely through the premises of the plaintiff.　After Dix and Thomson had become the owners of the timber on township 8, they cut a large quantity of it into saw logs, and prepared to float the same down the North Branch of Moose river over the premises of the plaintiff, to the mill of Dix and Thomson, some 16 miles below, claiming the right to do so upon the ground, among others, that the North Branch of Moose river was a public highway.　Thereupon the plaintiff brought an action in the supreme court against said Dix and Thomson, and demanded judgment that they be restrained and perpetually enjoined from floating logs upon or in any manner using that part of the North Branch of Moose river which flows through the premises of plaintiff, upon the ground that the same was a private stream or river, and that it was the exclusive property of the plaintiff, and that the defendants in that action had no right, title, or interest in or to the same, and had no right to use said river for any purpose whatsoever.　The issues in that action were referred to William G. Tracy, Esq., as sole referee, to hear and determine the same.　After hearing the proofs and allegations of the respective parties, he made his report in favor of the plaintiff, and on or about the 29th day of June, 1896, judgment was duly

entered in favor of the plaintiff, and against the defendants, which, among other things, determined that the plaintiff was the owner of Moose river, and was entitled to its use exclusively, and that the plaintiff was entitled to an injunction restraining the defendants in that action, and perpetually enjoining them from entering upon or floating any logs upon said river, or in any manner using the same, as it flows through the premises of the plaintiff, for a distance of 16 miles from township 8, which judgment was duly entered in the clerk's office of Herkimer county.    An appeal was taken from that judgment to the appellate division of the supreme court, Fourth department, and thereafter, by decision of said court, the said judgment was in all things affirmed, and such judgment of affirmance was duly entered on the 7th day of April, 1897.    44 N. Y. Supp. 1014.

Thereafter, and on the 9th day of April, 1897, a motion was made by the defendants in that action, Dix and Thomson, before said appellate division of the supreme court, for an order directing, among other things, that the remittitur of said court be recalled and amended, so as to permit the defendants in that action to float out and remove the timber which was cut prior to the filing of the decision of the referee, and by which judgment, so entered, the defendants were enjoined from floating logs down and over said North Branch of Moose river and its tributaries.    Such motion was made upon affidavits made by and on behalf of said defendants, which stated, in substance, that an appeal had been taken from the judgment rendered by the appellate division to the court of appeals; that said Dix and Thomson were the owners of the standing softwood timber upon township 8, John Brown's tract, in the counties of Herkimer and Hamilton; that they paid therefor the sum of $6 an acre, and that there were about 24,000 acres; that township 8 is situate on the North Branch of Moose river, and that the only way to get the softwood timber from township 8 to market is to float the same down said river; that, before making the purchase aforesaid, the defendants consulted counsel, and were advised that they had the legal right to float logs upon said river, and that it was a public highway; that, relying upon such advice of counsel, they improved said river at an expense of $40,000, and cut about 11,000,000 feet of timber, and prepared to float the same down the North Branch of said river, when an injunction was obtained by the plaintiff from the county judge of Oneida county, restraining said action on their part; that thereafter such injunction was dissolved, and thereupon the defendants continued their lumbering operations, and succeeded in floating down the river, to their mill below, all the timber cut by them, except about 2,000,000 feet, which remained, and was, at the time of the making of said motion before the appellate division of the supreme court, cut, and was on Big Safford Lake Branch of said river; and stating that the injunction rendered by said referee, and affirmed by the appellate division as aforesaid, prevented the said defendants from floating said timber upon said river, and that in no other way could it be taken to their mill below, or in any manner utilized.    Upon said application or motion, the appellate division of the supreme court thereafter, and on or about the 9th day of April, 1897 (in which was recited the affidavits above referred to), made an order that said judgment, restrain-

ing and enjoining the defendants from floating logs as aforesaid, entered upon the remittitur of said court—

"Be, and the same is hereby, vacated and set aside, and the remittitur of this court in the above-entitled action, on file in the office of the clerk of Herkimer county, the same having been filed on or about the 7th day of April, 1897, be, and the same is hereby, recalled, and the decision of this court, which was filed March 31, 1897, be, and the same is hereby, amended, so as to provide that judgment thereon, as well as all proceedings upon the judgment appealed from, shall be·suspended until and including the 20th day of May, 1897, upon condition that the defendants make, execute, and file, within five days from the entry of this order, an undertaking, in the sum of $5,000, with two sufficient sureties, conditioned to indemnify the plaintiff against any and all loss or damage whatsoever sustained by the plaintiff from this date, to and including the 20th day of May, 1897, by reason of suspending said judgment, such undertaking to be approved of as to sufficiency of sureties by a justice of the supreme court."

Thereupon the defendants ·in this action, for and on behalf of said John A. Dix and Edward Thomson, Jr., made, executed, and delivered to the plaintiff, the undertaking which is the subject of controversy here. Such undertaking recites all the proceedings relating to the litigation between the plaintiff and said Dix and Thomson, the several orders which were made and above referred to, the application to the appellate division of the supreme court for the suspension and modification of the judgment which restrained the defendants in that action, and the order of the court made thereon, and then follows this provision:

"Now, therefore, we [the defendants in this action] do jointly and severally undertake and agree to and with the plaintiff, said William S. De Camp, individually and as trustee under the last will and testament of Julia L. De Camp. deceased, that the defendants, said John A. Dix and Edward Thomson, Jr., will pay to the plaintiff, or to his duly-constituted legal representatives, any and all damage and loss whatsoever, not exceeding the sum of five thousand dollars ($5,000) sustained by the plaintiff, from the 9th day of April. 1897, to the 20th day of May, 1897, both inclusive, by reason of suspending said judgment so enjoining and restraining the defendants as aforesaid."

The question presented in this action is, what is the meaning of, or what is included in, the words "any and all damage and loss whatsoever"? The contention of the plaintiff is that those words include the tollage and the fair and reasonable value of the use of said river by the defendants. Counsel for defendants insist that said words in the undertaking must be confined to the damage which was done to the banks of the stream, or to some of the structures upon the stream, or to the premises or property of the plaintiff adjacent thereto, or to such sum as the plaintiff was prevented from obtaining for the use of said stream, because of its use by the defendants at the time it was occupied by them in floating their logs. Upon the trial of the action plaintiff gave no evidence tending to show that the banks of the stream, or the dams or structures thereon, or any property of the plaintiff adjacent thereto, was in any manner damaged or injured by floating the logs in question; and no evidence was given by the plaintiff showing, or tending to show, that he himself had any use for the stream in question at the time it was being used by Dix and Thomson, or that he could have sold or rented its use to any other person than the defendants, or that there was any other person or corporation who, at the time in question,

desired to use or occupy the stream for any purpose whatsoever.   Under those circumstances, it is urged upon behalf of the defendants that the plaintiff is only entitled to recover nominal damages in this action. The plaintiff insists that the words in the undertaking, "any and all damage and loss whatsoever," are broad enough to include, and were intended by the defendants to include, the fair market value of the tollage or use of the river from floating the logs in question, and that, the jury having found that such tollage or use was of the value of $500, he is entitled to enter judgment for that amount.

In floating logs upon the portion of the Moose river owned by plaintiff, Dix and Thomson were trespassers.   For the time being they took possession of and occupied the lands of the plaintiff against his will and protest.   They were permitted to do so by the order made by the appellate division of the supreme court, which order effectually tied the hands of the plaintiff, and prevented him from resisting the invasion of his property.   Such order was made, however, upon condition that, in the place of the right to resist the invasion of his property by Dix and Thomson by force, if necessary, he should have their bond, conditioned for the payment of all damages and loss which he might sustain on account of the trespass which they (Dix and Thomson) were about to commit, and did commit, upon his premises.   There is no doubt but that, in an action brought against Dix and Thomson, the plaintiff would be entitled to recover for the use and occupation of the premises what such use and occupation were reasonably worth.

The correct rule is stated in Sedg. Dam. § 185, as follows:

"Where the owner of land is wrongfully prevented from occupying it, the measure of his damages is the value of the use of the land; that is, its rental value.   So, where the plaintiff's farming land was wrongfully overflowed by the defendant, the measure of damages is the use of the land."

At section 186 of the same work it is said:

'Rent is given, not as specific damages, but as a fair average measure of compensation for interfering with the owner's use of property; and no inquiry should be permitted as to the likelihood in the particular case of rent having been obtained."

In an action by the plaintiff against Dix and Thomson for taking forcible possession of his river, it would be immaterial whether or not there were other customers for its use.   If they had taken plaintiff's horse against his will, and used it, they would have been liable, not only for any injury done to the horse, but also to the fair value of the use of the horse; and they would not be relieved from paying for such use by showing that, if they had not used the horse, he would have remained idle, or even by showing that the horse was in better condition for having been used.   So it would have been no defense, to an action brought against Dix and Thomson for using plaintiff's river against his will, that, if they (Dix and Thomson) had not used it, the river would have been unused, and that its use by them did not injure it in the least.   Such evidence might be competent as bearing upon the value of the use, but for no other purpose.

But, while it is clear that such would be the rule if the plaintiff had brought his action against Dix and Thomson, it is claimed that the defendants have not assumed any such obligation by executing the

undertaking in question; that its language must be strictly construed in their favor; and that, because the banks of the plaintiff's river were not damaged, no part of the real estate or appurtenances were damaged, and because, if the defendants had not used the river, no one else would,—the plaintiff sustained no damages or loss, within the meaning of the words of the undertaking, and, therefore, cannot recover in this action. It is the rule, as contended by defendants' counsel, that the obligation of a surety must be strictly construed, and cannot be extended to any liability not strictly within the terms of his contract.

In the case of Association v. Conkling, 90 N. Y. 116, the rule is stated as follows (per Earl, J.):

"A surety is never to be implicated beyond his specific engagement, and his liability is always strictissimi juris, and must not be extended by construction. His contract must be construed by the same rules which are used in the construction of other contracts. The extent of his obligation must be determined from the language used, read in the light of the circumstances surrounding the transaction. But, when the intention has thus been ascertained, then the courts carefully guard the rights of the surety, and protect him against a liability not strictly within the precise terms of his contract."

Again, it is said, in Ward v. Stahl, 81 N. Y. 406 (per Miller, J.):

"The liability of a surety is limited to the express terms of the contract, and his obligation should be construed strictly and favorably to the surety, so far as is warranted by the terms employed."

In McCluskey v. Cromwell, 11 N. Y. 593, the court says (per Allen, J.):

"The principle is well settled that a surety is not held beyond the fair scope of his engagement, and that, in contracts of suretyship, above all other contracts, the meaning of the words and phrases is not to be extended to the prejudice of the surety, but that words shall be taken to have been used in their ordinary sense. In other words, the liability of sureties is always strictissimi juris, and should not be extended by construction."

The rule is equally well settled that, in determining the liabilities of sureties, not only should the precise words of the contract be considered, but also all the circumstances surrounding the transaction, in order to determine the intent of the parties. Association v. Conkling, supra. The whole scope and purpose of the undertaking may be considered.

In the case of McElroy v. Mumford, 128 N. Y. 303, 28 N. E. 502, the headnote is as follows:

"The rule which restricts the liability of sureties to the strict terms of their contract, and forbids an extension thereof by inference or implication, does not apply to a case where the instrument shows a clear intention, on the part of the sureties, to come under a more enlarged obligation."

That was an action upon an undertaking given upon an appeal to the court of appeals from a judgment of affirmance of the general term. The undertaking described the judgment as one recovered by the respondent against the appellant on December 12, 1897, for $123.97, being costs of affirmance, and was to the effect that, in case of affirmance, the appellant would pay the sum directed to be paid by the judgment appealed from, or the part thereof affirmed. The notice of appeal served with the undertaking described the appeal as from an order

affirming a judgment, entered June 30, 1897, for $3,659.08, and from a judgment, entered December 12, 1897, for $123.97, costs upon said affirmance. The sureties claimed that, as the undertaking referred to the judgment at general term as one for costs alone, it should not be held to cover the original judgment for $3,659.08. Held untenable; that the evident intent was to appeal from and secure a stay of the entire judgment of the general term, and this was sufficiently indicated by the language of the undertaking, and the sureties were held liable for the entire amount of the two judgments.

In the case of Goodwin v. Bunzl, 102 N. Y. 224, 6 N. E. 399, the defendant had executed an undertaking on an appeal to the general term from a judgment for the recovery of a chattel. The undertaking actually given was in the form prescribed by the Code to stay execution on money judgment alone. It was held:

"In accordance with what was assumed to have been the intention of the parties, that the undertaking was a valid security for a stay of proceedings on the appeal, as otherwise it would have been an idle ceremony to execute it."

In this case the recitals in the undertaking, the orders and proceedings therein referred to, the purpose in procuring the injunction and judgment to be suspended, the real purpose of the undertaking, the situation and character of the property to be affected, and the status of the parties in respect to the property, may all be taken into consideration in determining what the real intent of the defendants was in executing the undertaking in question. They executed such instrument as a condition of obtaining an extraordinary and unusual order from the appellate division of the supreme court; an order suspending its solemn judgment, and permitting Dix and Thomson to invade and trespass upon the private premises of the plaintiff; an order which enabled them (Dix and Thomson) to use plaintiff's property for their own uses, purposes, and advantage. What was the purpose of the defendants in executing such undertaking, and thus securing to Dix and Thomson such valuable rights? Was it that they would pay any damages that might be done to the banks of the river in the wild forest, as it flows for a distance of 25 miles through the plaintiff's lands? If so, then the execution of such undertaking was an idle ceremony, because no damage of that character could possibly result. There were no structures upon the river to injure,—no improvements to destroy. It was substantially in its natural state, and it was clear that floating logs upon it could work no damage or injury to its physical condition. Was it the intention of the parties, in executing the bond in question, to pay loss of use only in case the plaintiff or some other person should happen to desire to use the river during the six weeks Dix and Thomson were permitted to use it? If so, then, again, the giving of the undertaking was an idle ceremony, because it clearly appeared, by the proceedings referred to in the undertaking, that no one else could use the river, or had use for it; that no customer could have been found who would use the river during the six weeks that Dix and Thomson were permitted to use it by the order of the appellate division of the supreme court.

If, however, it be assumed that the defendants intended to obligate themselves to pay what the use of such river by the defendants was

fairly and reasonably worth, then their action in giving the undertaking means something,—becomes intelligible. In that case they obligated themselves. In the other case suggested they incurred no liability, and, in case they did not, under the circumstances, obligate, or intend to obligate, themselves, the giving of the undertaking was an idle ceremony, and under it by no possibility could they incur liability. The condition imposed by the appellate division in such case was a delusion, and, if complied with by Dix and Thomson, could not in any way result in benefit to the plaintiff. It is believed that the intention of the appellate division in requiring Dix and Thomson, as a condition of compelling the plaintiff to permit them to use and enjoy his property, to execute an undertaking, was to secure to him payment for the fair use of his property, and that it was the intention of the defendants, in executing the undertaking in question, to obligate themselves to make such payment. It is also believed that the plaintiff sustained loss to the amount of the fair value of the use of the stream, within the exact meaning of the words of the undertaking. Dix and Thomson had 2,000,000 feet of timber cut, ready to be floated to their mill below, over the river which it had been determined belonged exclusively to the plaintiff, and which flowed through his premises. There was no other way to get such timber to market, except to float the same over said river. It also appeared that, unless so removed, then such timber would be greatly injured, if not totally destroyed. It seems to me that it is not unreasonable to suppose that, under those conditions, if the plaintiff's hands had not been tied by the order of the appellate division of the supreme court, they would have paid the plaintiff at least the fair value of the use of the river, for the privilege of using the same. The court, by its order, put it out of the power of the plaintiff to negotiate for the use of his property; and it would seem that the court must have intended that those permitted to use such property by its order, and against the protest of the owner, would at least pay what such use was reasonably worth. Such, I believe, was the intention of the parties in executing the undertaking. It follows that the plaintiff should be permitted to enter judgment upon the verdict rendered in this action, to wit, for the sum of $500, with costs to be taxed. Ordered accordingly.