WILLIAM S. DE CAMP, Individually and as Trustee under the Last Will and Testament of JULIA L. DE CAMP, Deceased, Respondent, *v.* EDWARD M. BURNS and GARRET A. VAN ALLEN, Appellants.

*Undertaking given to secure the vacating of a temporary injunction in an action to restrain the driving of logs down a private stream — recovery of loss of tollage — injury to the stream as a fishery.*

As a condition of vacating a temporary injunction granted in an action brought to restrain the defendants from floating or driving logs in a private stream, which flowed over the plaintiff's land, an undertaking was given to indemnify the plaintiff against "all damages or loss   *   *   *   which the plaintiff herein may incur by reason of the vacating of said injunction."

*Held,* that, in view of the fact that if the injunction had not been vacated, the defendants, who had cut many millions of feet of timber into logs and placed them in and along the stream preparatory to floating them down it over the plaintiff's land to their mill, would have been under the imperative necessity of contracting with the plaintiff for the use of the stream, the latter sustained a loss of the tollage for floating the logs, and that such loss was covered by the condition of the undertaking;

That as the plaintiff did not finally succeed in the injunction suit as to that portion of the stream below a certain point, he was not entitled to tollage below such point; that he was, however, entitled to damages occasioned to his property in consequence of the use of the stream for the driving of logs whether such injury was occasioned above or below the point in question;

That, in view of the fact that there existed reasonable grounds for the claim of a right on the part of the defendants to float logs through such stream, and that, had such right been granted by the plaintiff to the defendants, the same damages, generally speaking, would have been occasioned to the stream for fishing purposes (although had the use of the stream been granted such damages might have been stipulated for, while in the present instance the plaintiff was com-

pelled to take the undertaking as it was), and in view of the further fact that the stream, in its natural state, was obstructed with ancient flood jams, by falls and shallow rapids and short turns in its banks, to remedy which the defendants had expended a large sum of money, thereby saving a considerable sum to the plaintiff, who also contemplated using the stream for the transportation of timber, nothing should be allowed for damages occasioned to the stream in respect to its use for fishing, which was not the actual, natural and proximate result of the wrong committed by the defendants.

APPEAL by the defendants, Edward M. Burns and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Herkimer on the 28th day of December, 1897, upon the decision of the court rendered after a trial at the Herkimer Trial Term before the court without a jury.

*Charles E. Snyder,* for the appellants.

*C. D. Adams,* for the respondent.

GREEN, J. :

In November, 1894, an action was commenced against Dix and Thomson, and a perpetual injunction was prayed for, that the defendants be restrained from floating or driving logs in the North Branch of the Moose river (Adirondack region), which flows over the plaintiff's lands, upon the ground that it was a private stream, and the exclusive property of the plaintiff, in which the defendants had no right of easement. A temporary injunction order was granted on the 13th of March, 1895, which was vacated upon condition that an undertaking be given to indemnify the plaintiff against any and all loss or damage whatsoever that he might sustain by reason of the vacation of the injunction. An undertaking was thereupon executed in conformity with the terms of the order — Burns and Van Allen signing the same as sureties.

Judgment was rendered in the plaintiff's favor, and the same was affirmed by this court. (*De Camp* v. *Thomson,* 16 App. Div. 528.)

The present action is against Burns and Van Allen, the sureties upon said undertaking.

The defendants contend that, in view of the peculiar circumstances and conditions existing in the case, they are not liable for the value of the use of the stream to Dix and Thomson, the principals, upon their undertaking to pay " All damages or loss    *    *    *    which the

plaintiff herein may incur by reason of the vacating of said injunction." In other words, that an agreement to pay a reasonable compensation for such use was not within the contemplation of the parties and ought not to be implied from the terms in which their obligation is expressed ; that, in order to recover compensation for the use of the stream in floating or driving logs, the undertaking of the sureties must expressly assume such liability.

This contention is based upon the fact established by the proofs, that no one but Dix and Thomson, the owners of the timber upon township 8, could have used this stream for floating logs; nor could they have so used it until after they had improved and adapted it for such purposes at a large expense to themselves. It is argued, therefore, that as the plaintiff could not have let the use of the stream to any other person, there was not, and could not be, any demand for it, and, consequently, no loss resulted on that account by reason of vacating the injunction. The answer to this is, that if the injunction had not been vacated and the indemnity bond substituted in the place of it, Dix and Thomson would have been under the imperative necessity of contracting with the plaintiff for the use of the stream; the latter, therefore, sustained a loss of the tollage for floating the logs which he would undoubtedly have received from them. At the time the injunction was issued, Dix and Thomson had cut many million feet of timber into logs and placed them in and along the streams, preparatory to floating them down the North Branch of the Moose river, over plaintiff's lands, to their mill. They claimed a right of easement in the stream, as a right of way by necessity, arising upon a severance and conveyance by the original owner of townships 7 and 8. In order to float these logs and to save themselves from great loss, Dix and Thomson were put to one of two alternatives — either to hire the use of the stream for an agreed compensation, or to procure a vacation of the injunction. The court vacated the injunction upon condition that security should be given for the payment of any loss or damage the plaintiff might sustain in consequence thereof. The purpose of the undertaking was to give Dix and Thomson the privilege of floating their logs and thereby save them from loss. The question whether they were under any legal obligation to pay the plaintiff for the use of the stream was held in abeyance until the determination of the suit.

It having been determined that the plaintiff had a legal right to exact tollage for such use, which they were prevented from receiving by the substitution of the undertaking in the place of the injunction, the loss of a reasonable rate of tollage was a loss within the contemplation of the parties to the instrument and embraced within its terms. (See *De Camp* v. *Bullard*, 22 Misc. Rep. 441; affd. by this court at the July session, 1898, without opinion, *post*, p. 627.) It should be remarked that, although Dix and Thomson claimed no exclusive rights in the stream, yet the plaintiff was practically deprived of the use of it, if he had desired to cut a large quantity of timber upon his own land and to float the logs down the stream.

Section 629 of the Code provides that the undertaking shall be conditioned to indemify the plaintiff against any *loss* sustained by reason of vacating the injunction. The undertaking given upon the granting of an injunction shall be to the effect that the plaintiff will pay to the party enjoined such *damages* as he may sustain by reason of the injunction. (§620.) The words "loss" or "damages" are the terms commonly employed in all injunction bonds to express the obligation assumed by the sureties. Now, it is a well-established rule that the loss of the use and rental of the premises during the time the defendant was enjoined is a proper element of damages to be recovered in an action upon the bond. (2 High Inj. § 1673; *Richardson* v. *Allen*, 74 Ga. 719; *Wood* v. *State*, 66 Md. 61.)

We are, therefore, of the opinion that the sureties are liable for the payment of a reasonable compensation for the use of the stream by Dix and Thomson.

The court finds: "That by reason of the physical changes made by said defendants in the stream in clearing said stream and changing its banks and bed and altering its flow, as aforesaid, for the purpose of driving their said logs, and in driving them as aforesaid, between April 19th, 1895, and June 29, 1896, said exclusive right of fishing was injured and lessened and remains diminished.

"That this item and the item of taking out Pete's dam, * * * occasioned a loss to plaintiff of the sum of $3,500."

The cost of replacing Pete's dam was shown to be not over $300; and although the injury to the stream as a "fishery" was alleged at $3,000, the court allowed $3,200.

The evidence going to establish the amount of damages occasioned

to the stream in respect of its use for fishing is altogether unsatisfactory and unconvincing. The finding is based rather more upon conjecture, speculations and probabilities than facts or legitimate inferences. Supposition and conjecture are made to stand for proof, and vagueness of statement is substituted for certainty.

In estimating the damages to be allowed upon the dissolution of an injunction restraining one from exercising acts of ownership over his real property, the courts are not governed by arbitrary rules, but proceed upon equitable principles; and while it is difficult to fix any precise rule or standard for determining the damages, it may be said generally that nothing will be allowed which is not the actual, natural and proximate result of the wrong committed. (2 High Inj. §§ 1663, 1673.)

It should be particularly noted that Dix and Thomson acted in entire good faith, upon the advice of counsel, and in reliance upon express legislative authority. They contended (1) that they were entitled to float logs in the North Branch, as a right of way, by necessity; (2) that the stream was a public highway at common law for the floating of logs; (3) that it had been declared a public highway for such purposes by statute. (Laws of 1851, chap. 207; Laws of 1894, chap. 712.) In view of these claims, it became necessary for the plaintiff to institute a suit to have settled and determined the rights of the respective parties in respect of the use of the stream. (*De Camp* v. *Thomson*, 16 App. Div. 528.) Evidently, there existed reasonable grounds for the claim of right, and it is proper and just that the measure of the liability of the sureties upon their undertaking should be determined by equitable considerations.

It is an important circumstance to take into consideration that, if the plaintiff had granted the use of the stream for driving the logs, the same damage (generally speaking) would have been sustained to the stream for fishing purposes. It is true that the payment of such damages, in that case, might be stipulated for, whilst in the present instance the plaintiff was compelled to take the undertaking as it is. Dix and Thomson were authorized to float their logs, and it became necessary to cut out flood jams and remove obstructions so as to clear the stream and make the use of it possible.

Again, there is another circumstance to be considered and weighed.

It is alleged in the complaint in the injunction action that the stream, in its natural state, was obstructed with ancient flood jams, numerous and of large extent, by falls and shallow rapids and short and sharp turns in its banks; that it was physically impossible to float, drive or transport logs and timber in and over the stream as it flowed over plaintiff's lands; that he contemplated the erection of mills and other improvements upon the stream at an early date to saw his timber for market, and to transport down the stream for sale such portions of the timber as he may not manufacture into lumber. It was also stated that the plaintiff's standing timber on townships 7 and 1, which are commanded by the stream, and for which he had the exclusive right to use the same for transportation, is estimated at 60,000,000 feet.

It appears that Dix and Thomson had made considerable altera- tions and improvements in the stream, materially changing its physical characteristics, which were necessary to adapt it to the pur- pose of floating logs. These alterations required a large exenditure of money, and the plaintiff will receive the benefit of these improve- ments, to an extent, when he comes to float his own logs. It seems that the plaintiff would have been obliged to make many such altera- tions if they had not been made by Dix and Thomson. It was a matter of prime importance to him that the stream should be ade- quately adapted to the floating of his logs, and the injury to the fishing was a matter of secondary consideration.

We are of the opinion that the amount awarded for the alleged injury to the fishing is unwarranted by the evidence and excessive. The damages should be real and substantial, and the award should not exceed the damages actually sustained.

The sum allowed as compensation for the use of the stream appears to be excessive. According to plaintiff's witnesses the reasonable value of the use amounted to $6,000, at the rate of two cents per M per mile, or fifty cents per M for the twenty-five miles driven. The court found that the use of the stream for driving logs was fairly worth, for twenty-five miles, the sum of $4,500.

This testimony is based upon the assumption that there was no interference with the floating of the logs, or any obstructions placed in the stream by the plaintiff. It appears that plaintiff is not entitled to recover tollage for the full twenty-five miles, since the

plaintiff did not finally succeed in the injunction suit, as to that portion of the stream below the Fulton Chain Branch.

The defendants are liable for all injury or damage occasioned to plaintiff's property in consequence of the use of the stream for the purpose of driving logs, whether such injury was occasioned above or below the Fulton Chain Branch. No such injury could have been committed if the undertaking had not been given, and it resulted from the exercise of the privilege granted by the court. The loss or damage occasioned by injury or destroying the bridges and booms and Pete's dam and the loss of the cedar posts, are proper items of damage.

Since Dix and Thomson had no exclusive right or privilege in the use of the stream, the plaintiff had an equal right, and reciprocal duties were created.

The person driving the logs was bound to exercise good faith, prudence and discretion in all respects. Damages attributable to plaintiff's own willful or negligent act or omission cannot be imposed upon the defendants.

Sureties upon an injunction bond are liable for waste and injury committed to the land. (2 High Inj. § 1673; 74 Ga. 719.)

In respect to the defendants' contention that the issuing of a second injunction is a bar to this action, there is an adjudication opposed to it. (See *Colcord* v. *Sylvester*, 66 Ill. 540.)

For the reasons and upon the considerations aforesaid, we have arrived at the conclusion that there should be a new trial.

All concurred.

Judgment reversed and a new trial ordered, with costs to the appellants to abide the event.