DE CAMP v. BURNS et al.

(Supreme Court, Appellate Division, Fourth Department.  October 7, 1898.)

1. INJUNCTION—BOND TO VACATE.
     Bond to vacate temporary injunction against floating logs down a stream claimed by defendants to be a public highway, and by plaintiff to be his private property, conditioned to pay "all damages or loss * * * which plaintiff may incur by reason of the vacation," embraces loss for tollage on defendants' logs.

2. SAME—DAMAGES.
     Damages to a stream, in respect to its use for fishing, occasioned by alterations necessary to float logs, should not be allowed on bond conditioned to pay all damages or loss occasioned by vacation of injunction against floating logs;  the complaint in the injunction suit alleging that plaintiff contemplated making improvements to float his own logs.

8. SAME—ACTION ON BOND.
     The issuing of a second injunction is not a bar to an action on a bond to vacate a temporary injunction conditioned to pay all damages or loss occasioned by such vacation.

Appeal from trial term.

Action by William S. De Camp, individually and as trustee under the will of Julia L. De Camp, deceased, against Edward M. Burns and another.  From judgment for plaintiff entered on a decision of the trial court without a jury, defendants appeal.  Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles E. Snyder, for appellants.
C. D. Adams, for respondent.

GREEN, J.    In November, 1894, an action was commenced against Dix and Thomson, and a perpetual injunction was prayed for, that the defendants be restrained from floating or driving logs in the North branch of the Moose river (Adirondack regions), which flows over the plaintiff's lands, upon the ground that it was a private stream, and the exclusive property of the plaintiff, in which the defendants had no right of easement. A temporary injunction order was granted on the 13th of March, 1895, which was vacated upon condition that an undertaking be given to indemnify the plaintiff against any and all loss or damage whatsoever that he might sustain by reason of the vacation of the injunction.    An undertaking was thereupon executed in conformity with the terms of the order, Burns and Van Allen signing the same as sureties.    Judgment was rendered in the plaintiff's favor, and the same was affirmed by this court.    16 App. Div. 528, 44 N. Y. Supp. 1014.

The present action is against Burns and Van Allen, the sureties upon said undertaking.    The defendants contend that, in view of the peculiar circumstances and conditions existing in the case, they are not liable for the value of the use of the stream to Dix and Thomson, the principals, upon their undertaking to pay "all damages or loss which the plaintiff may incur by reason of the vacation of the injunction."    In other words, that an agreement to pay a reasonable compensation for such use was not within the contemplation of the parties, and ought not to be implied from the terms in which their obligation is expressed; that, in order to recover compensation for the use of the stream in floating or driving logs, the undertaking of the sureties must expressly assume such liability.    This contention is based upon the fact, established by the proofs, that no one but Dix and Thomson, the owners of the timber upon township 8, could have used this stream for floating logs; nor could they have so used it until after they had improved and adapted it for such purposes, at a large expense to themselves.    It is argued, therefore, that, as the plaintiff could not have let the use of the stream to any other person, there was not, and could not be, any demand for it, and consequently no loss resulted on that account by reason of vacating the injunction.    The answer to this is that if the injunction had not been vacated, and the indemnity bond substituted in the place of it, Dix and Thomson would have been under the imperative necessity of contracting with the plaintiff for the use of the stream.    The latter therefore sustained a loss of the tollage for floating the logs, which he would undoubtedly have received from them.    At the time the injunction was issued, Dix and Thomson had cut many million feet of timber into logs, and placed them in and along the streams, preparatory to floating them down the North branch of the Moose river, over plaintiff's lands, to their mill. They claimed a right of easement in the stream, as a right of way by necessity, arising upon a severance and conveyance by the original owner of townships 7 and 8.    In order to float these logs, and to save themselves from great loss, Dix and Thomson were put to one of two alternatives,—either to hire the use of the stream for an agreed compensation, or to procure a vacation of the injunction.    The court vacated the injunction, upon condition that security should be given

for the payment of any loss or damage the plaintiff might sustain in consequence thereof.    The purpose of the undertaking was to give Dix and Thomson the privilege of floating their logs, and thereby save them from loss.    The question whether they were under any legal obligation to pay the plaintiff for the use of the stream was held in abeyance until the determination of the suit.

It having been determined that the plaintiff had a legal right to exact tollage for such use, which they were prevented from receiving by the substitution of the undertaking in the place of the injunction, the loss of a reasonable rate of tollage was a loss within the contemplation of the parties to the instrument, and embraced within its terms.    See De Camp v. Bullard, 22 Misc. Rep. 441, 50 N. Y. Supp. 807, affirmed by this court, at the July session, 1898, without opinion. It should be remarked that, although Dix and Thomson claimed no exclusive rights in the stream, yet the plaintiff was practically deprived of the use of it, if he had desired to cut a large quantity of timber upon his own land, and to float the logs down the stream.    Section 629 of the Code provides that the undertaking shall be conditioned to indemnify the plaintiff against any loss sustained by reason of vacating the injunction.    The undertaking given upon the granting of an injunction shall be to the effect that the plaintiff will pay, to the party enjoined, such damages as he may sustain by reason of the injunction.    Section 620.    The words "loss" or "damages" are the terms commonly employed in all injunction bonds to express the obligation assumed by the sureties.    Now, it is a well-established rule that the loss of the use and rental of the premises during the time the defendant was enjoined is a proper element of damages to be recovered in an action upon the bond.    2 High, Inj. § 1673; Richardson v. Allen, 74 Ga. 719; Wood v. State, 66 Md. 61, 5 Atl. 476.    We are therefore of the opinion that the sureties are liable for the payment of a reasonable compensation for the use of the stream by Dix and Thomson.

The court finds:

"That by reason of the physical changes made by said defendants in the stream in clearing said stream, and changing its banks and bed, and altering its flow, as aforesaid, for the purpose of driving their said logs, and in driving them as aforesaid, between April 19, 1895, and June 29, 1896, said exclusive right of fishing was injured and lessened and remains diminished. That this item, and the item of taking out Pete's dam, * * * occasioned a loss to plaintiff of the sum of $3,500."

The cost of replacing Pete's dam was shown to be not over $300; and, although the injury to the stream as a "fishery" was alleged at $3,000, the court allowed $3,200.    The evidence going to establish the amount of damages occasioned to the stream in respect of its use for fishing is altogether unsatisfactory and unconvincing.    The finding is based rather more upon conjecture, speculations, and probabilities than facts or legitimate inferences.    Supposition and conjecture are made to stand for proof, and vagueness of statement is substituted for certainty.

In estimating the damages to be allowed upon the dissolution of an injunction restraining one from exercising acts of ownership over his real property, the courts are not governed by arbitrary rules, but pro-

ceed upon equitable principles; and, while it is difficult to fix any precise rule or standard for determining the damages, it may be said generally that nothing will be allowed which is not the actual, natural, and proximate result of the wrong committed. 2 High, Inj. §§ 1663, 1673. It should be particularly noted that Dix and Thomson acted in entire good faith, upon the advice of counsel, and in reliance upon express legislative authority. They contended (1) that they were entitled to float logs in the North branch, as a right of way by necessity; (2) that the stream was a public highway, at common law, for the floating of logs; (3) that it had been declared a public highway for such purposes by statute. Laws 1851, c. 207; Laws 1894, c. 712. In view of these claims, it became necessary for the plaintiff to institute a suit to have settled and determined the rights of the respective parties in respect of the use of the stream. 16 App. Div. 528, 44 N. Y. Supp. 1014. Evidently, there existed reasonable grounds for the claim of right; and it is proper and just that the measure of the liability of the sureties upon their undertaking should be determined by equitable considerations.

It is an important circumstance to take into consideration that, if the plaintiff had granted the use of the stream for driving the logs, the same damage (generally speaking) would have been sustained to the stream for fishing purposes. It is true that the payment of such damages in that case might be stipulated for, while in the present instance the plaintiff was compelled to take the undertaking as it is. Dix and Thomson were authorized to float their logs, and it became necessary to cut out flood jams and remove obstructions, so as to clear the stream and make the use of it possible. Again, there is another circumstance to be considered and weighed. It is alleged in the complaint in the injunction action that the stream, in its natural state, was obstructed with ancient flood jams, numerous and of large extent, by falls and shallow rapids and short and sharp turns in its banks; that it was physically impossible to float, drive, or transport logs and timber in and over the stream as it flowed over plaintiff's lands; that he contemplated the erection of mills and other improvements upon the stream at an early date, to saw his timber for market, and to transport down the stream for sale such portions of the timber as he may not manufacture into lumber. It was also stated that the plaintiff's standing timber on towns 7 and 8, which are commanded by the stream, and for which he had the exclusive right to use the same for transportation, is estimated at 60,000,000 feet. It appears that Dix and Thomson had made considerable alterations and improvements in the stream, materially changing its physical characteristics, which were necessary to adapt it to the purpose of floating logs. These alterations required a large expenditure of money, and the plaintiff will receive the benefit of these improvements, to an extent, when he comes to float his own logs. It seems that the plaintiff would have been obliged to make many such alterations if they had not been made by Dix and Thomson. It was a matter of prime importance to him that the stream should be adequately adapted to the floating of his logs, and the injury to the fishing was a matter of secondary consideration.

We are of the opinion that the amount awarded for the alleged injury to the fishing is unwarranted by the evidence, and excessive. The damages should be real and substantial, and the award should not exceed the damages actually sustained. The sum allowed as compensation for the use of the stream appears to be excessive. According to plaintiff's witnesses, the reasonable value of the use amounted to $6,000, at the rate of 2 cents per M. per mile, or 50 cents per M. for the 25 miles driven. The court found that the use of the stream for driving logs was fairly worth, for 25 miles, the sum of $4,500. This testimony is based upon the assumption that there was no interference with the floating of the logs, or any obstructions placed in the stream, by the plaintiff. It appears that plaintiff is not entitled to recover tollage for the full 25 miles, since the plaintiff did not finally proceed in the injunction suit, as to that portion of the stream below the Fulton Chain branch. The defendants are liable for all injury or damage occasioned to plaintiff's property in consequence of the use of the stream for the purpose of driving logs, whether such injury was occasioned above or below the Fulton Chain branch. No such injury could have been committed if the undertaking had not been given, and it resulted from the exercise of the privilege granted by the court. The loss or damage occasioned by injury or destroying the bridges and booms and Pete's dam, and the loss of the cedar posts, are proper items of damage. Since Dix and Thomson had no exclusive right or privilege in the use of the stream, the plaintiff had an equal right, and reciprocal duties were created. The person driving the logs was bound to exercise good faith, prudence, and discretion in all respects. Damages attributable to plaintiff's own willful or negligent act or omission cannot be imposed upon the defendants. Sureties upon an injunction bond are liable for waste and injury committed to the land. 2 High, Inj. § 1673; 74 Ga. 719.

In respect to defendants' contention that the issuing of a second injunction is a bar to this action, there is an adjudication opposed to it. See Colcord v. Sylvester, 66 Ill. 540. For the reasons and upon the considerations aforesaid, we have arrived at the conclusion that there should be a new trial.

Judgment reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.