805 A.2d 268

Anthony G. CAFFREY

v.

DEPARTMENT OF LIQUOR CONTROL FOR MONTGOMERY COUNTY, Maryland, et al.

No. 127, Sept. Term, 2001.

Court of Appeals of Maryland.

Aug. 23, 2002.

Cynthia E. Young, Annapolis, for petitioner.

Marc P. Hansen, Chief, County Atty. (Charles W. Thompson, Jr., County Atty., Karen L. Federman Henry, Principal Counsel for Appeals, and Charles L. Frederick, Associate County Atty., on brief), Rockville, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

In 1997, Montgomery County, Maryland, solicited proposals to operate and manage a county-owned, retail off-sale alcoholic beverage store.[1] Petitioner (Anthony G. Caffrey) submitted a

---

1. At the time of the procurement process in this case, Maryland Code (1957, 1996 Repl.Vol.), Article 2B, § 15–203(a) provided that the Montgomery County Department of Liquor Control ("the Department") could "establish and maintain stores to be known as 'county liquor dispensaries'" for the sale of "any alcoholic beverages." Pursuant to Md.Code (1957, 1996 Repl.Vol.), Art. 2B, § 15–204(a), the Department had "an absolute monopoly of the sale and distribution of" those beverages. Those provisions, when read in concert, established Montgomery County's exclusive authority to own and operate retail off-sale liquor stores.

We note, however, that while the above statutes remain in effect today (see Md.Code (1957, 2001 Repl.Vol.), Art. 2B, §§ 15–203(a), 15–204(a)), on 1 October 1997, the Maryland Code was amended to "prohibit[ ] the Director of the [Department] from contracting with persons to operate certain liquor stores." Ch. 701, Acts of 1997. As amended, current Md.Code (1957, 2001 Repl.Vol.), Art. 2B, § 2–301(g)(2) provides that the Department "may sell its inventory through county liquor dispensaries at wholesale and retail and through retail outlets operated by individuals with whom the Department contracts under § 15–203(d)." Relevant here, that sections states:

(1) This subsection applies in Montgomery County.

(2) The county liquor dispensaries may be established at one or more locations determined by the Director of the Department of Liquor Control with the approval of the County Executive.

(3) The Director of the Department of Liquor Control may not enter into a contract with a person to operate a retail outlet for the sale of beer, wine and liquor unless:

(i) The Board of License Commissioners determines that the person is fit to operate the retail outlet; and

(ii) The Director had a contract with the person to operate the retail outlet on January 1, 1997.

proposal, but was not awarded the contract. Subsequently, Petitioner submitted requests to Respondents (the Montgomery County's Department of Liquor Control, Board of License Commissioners, Office of Procurement, and Ethics Commission) under the Maryland Public Information Act ("the MPIA"), Maryland Code (1999 Repl.Vol., 2001 Supp.), State Government Article, §§ 10–611–10–628 ("MPIA §§ 10–611–10–628"),[2] for inspection of various documents relating to the

> (4) Except as provided in paragraph (3) of this subsection, the Director of the Department of Liquor Control may not contract with a person to operate a county liquor dispensary or a retail outlet for the sale of beer, wine, and liquor.
>
> . . . .

Md.Code (1957, 2001 Repl.Vol.), Art. 2B, § 15–203(d).

In addition, at the time of the 1997 procurement process in the present case, the section of the Maryland Code regarding retail off-sale beer, wine and liquor licenses did "not apply in Montgomery County." Md.Code (1957, 1996 Repl.Vol.), Art. 2B, § 6–101(q). Today, however, a "Class A beer, wine and liquor license," which "authorizes the holder to keep for sale and to sell all alcoholic beverages at retail," may be issued to a "person who on June 30, 1997, both held a Class A beer, wine and liquor license and operated a Class A business where the licensed premises were located in that portion of the City of Takoma Park that was formerly part of Prince George's County." Md.Code (1957, 2001 Repl.Vol.), Art. 2B, §§ 6–101(a), (q)(4).

2. As we explained in *Kirwan v. The Diamondback*, 352 Md. 74, 80–81, 721 A.2d 196, 199 (1998),

> [t]he Maryland Public Information Act establishes a public policy and a general presumption in favor of disclosure of government or public documents. The statute thus provides (§ 10–612(a) and (b) of the State Government Article):
>
> "(a) *General Right to information.*—All persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees.
>
> (b) *General construction.*—To carry out the right set forth in subsection (a) of this section, unless an unwarranted invasion of the privacy of a person in interest would result, this Part III of this subtitle shall be construed in favor of permitting inspection of a public record, with the least cost and least delay to the person or governmental unit that requests the inspection."
>
> The statute also contains a broad definition of a "public record." [*See* § 10–611(g)(1).] Section 10–613(a) of the Act states that, "[e]xcept as otherwise provided by law, a custodian shall permit a person or governmental unit to inspect any public record at any reasonable time." Sections 10–615 through 10–617 delineate certain public

relevant proposal and selection process. Respondents produced some of the documents, but withheld others, citing various privileges and grounds for denial available under the MPIA.

Petitioner, in early 2000, filed an action in the Circuit Court for Montgomery County seeking a review of Respondents' denials of his requests to review the withheld documents. Respondents subsequently released the documents requested by Petitioner, but filed a motion for summary judgment requesting that the Circuit Court uphold their prior decisions not to disclose the disputed documents "as reasonable and justified at the time." Petitioner, in response, filed a cross-motion for summary judgement seeking an "award of attorney's fees and actual and punitive damages in accordance with the [M]PIA" based on Respondents' initial denials and the necessity to initiate the legal action to obtain disclosure of the documents.

In the first phase of an agreed upon bifurcated procedure, the Circuit Court held, on 30 October 2000, that the Department of Liquor Control for Montgomery County ("the Department") was immune from suits for damages, including counsel fees, under Md.Code (1998 Repl.Vol.), Courts and Judicial Proceedings Art., § 5–504.[3] As a result, the Circuit Court refrained from determining whether the Department erred in withholding nineteen documents from Petitioner. With regard to the remaining documents withheld by the Board of License Commissioners ("the Board"), the Office of Procure-

---

records which are not disclosable, and § 10–618 deals with "permissible denials."

(Some alterations in original) (footnote omitted). *See also Office of the Governor v. Washington Post,* 360 Md. 520, 544, 759 A.2d 249, 262 (2000) (quoting *Kirwan*).

3. Maryland Code (1998 Repl.Vol.), Courts and Judicial Proceedings Art., § 5–504 provides that "[t]he Department of Liquor Control for Montgomery County shall be":

 (1) Immune from all suits for damages; and

 (2) Subject to suit only for the enforcement of contracts made by the Department of Liquor Control for Montgomery County.

ment, and the Ethics Commission, the Circuit Court ruled that Montgomery County Charter, § 505 [4] did not waive the asserted attorney-client or deliberative executive (interagency) privileges protected under the MPIA and that, therefore, Respondents were entitled to withhold certain documents pursuant to those privileges. After considering each document individually, the Circuit Court found that six documents were withheld properly and that two documents were withheld improperly from Petitioner.

Subsequently, in the second phase of the proceeding, held on 17 January 2001, the Circuit Court denied Petitioner's motion for counsel fees and costs. In addition, the Circuit Court also dismissed with prejudice Petitioner's request for actual and punitive damages under the MPIA.

Petitioner appealed to the Court of Special Appeals. In particular, Petitioner challenged the Circuit Court's determinations that the Department was immune from an award of counsel fees under Md.Code (1998 Repl.Vol.), Courts and Judicial Proceedings Art., § 5–504, and that Montgomery County Charter, § 505 did not waive the attorney-client privilege and the deliberative executive (interagency) privilege protected in the MPIA. In an unreported opinion, the Court of Special Appeals affirmed the decision of the Circuit Court.

We granted Petitioner's petition for writ of certiorari, *Caffrey v. Dep't of Liquor Control*, 368 Md. 239, 792 A.2d 1177 (2002), to consider the following questions:

Did the trial court abuse its discretion in denying an award of counsel fees and costs to Petitioner because it erred as a

---

4. Pursuant to Montgomery County Charter, § 505, in Montgomery County

[a]ny person shall have the right to inspect any document, except confidential police records, personnel records, or records of a confidential private nature as defined by law. The Council may adopt reasonable regulations for such inspection. A certified copy of any such document shall be furnished upon payment of a reasonable fee established by such regulations. This section shall not apply to a document or other material obtained or prepared in anticipation of litigation or for use in legal proceedings to which the County is a party.

matter of law in its rulings concerning the disclosed documents?

A. Does the Montgomery County Department of Liquor Control, which is "immune from all suits for damages" under Courts and Judicial Proceedings Article, Section 5–504 have immunity from an award of attorney's fees and costs under the Maryland Public Information Act, State Government Article, Section 10–623(f) [5]?

B. Does the Montgomery County Charter, section 505 waive attorney-client privilege and deliberative privilege so that these exemptions cannot be asserted to sustain an otherwise permissible denial under Section 10–618 of the Maryland Public Information Act?

## I. *Relevant Factual Background*

As described by the Court of Special Appeals in its unreported opinion in the instant case,

[i]n 1997, Montgomery County requested proposals to operate and manage county owned liquor stores. The request for proposals provided that any offeror should submit a proposal outlining a plan for the operation and management of stores, a statement of the offeror's retail business and management expertise, and a staffing plan. If an offeror received a grade of 70 percent or higher, the offeror could submit a cost proposal. The award was to be made to the offeror submitting the lowest price proposal. [Petitioner] was an offeror, and he was not awarded the contract.

On October 29, 1997, [Petitioner] filed a bid protest, and on February 4, 1998, he filed a complaint with the County Ethics Commission. The latter was based on the fact that a principal in the entity which was awarded the bid, Mr. Leonard Kligman, sat on the Board of License Commission-

---

5. Pursuant to MPIA § 10–623(f),

[i]f the court determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees and other litigation costs that the complainant reasonably incurred.

ers. The bid protest was dismissed. Subsequently, Mr. Kligman resigned from the Board, acknowledged a violation of the ethics laws, and was reprimanded by the Ethics Commission.

Following those events, Petitioner, pursuant to the MPIA, submitted a number of requests to Respondents for inspection of various documents relating to the relevant procurement process.[6] Respondents granted Petitioner access to a number of documents, but also denied Petitioner access to certain documents. More specifically, the Department denied Petitioner access to over thirty documents, the Board denied him access to three documents, and the Office of Procurement and the Ethics Commission each denied him access to four documents.

On 3 March 2000, Petitioner filed a complaint in the Circuit Court for Montgomery County against Respondents requesting that the Circuit Court "review the denials by the custodians of records for agencies and units of Montgomery County, Maryland of requests by [Petitioner] to review documents pursuant to" the MPIA. Over a month later, Petitioner filed an amended complaint in the Circuit Court. Respondents, on 17 May 2000, filed an answer to Petitioner's amended complaint. In their answer, Respondents requested that the Circuit Court "[d]ismiss [Petitioner's] ... amended complaint," "[d]eny [Petitioner] all relief requested," "[e]nter judgment in favor of the [Respondents]," and "[a]ward the [Respondents] costs and reasonable attorneys' fees."

Petitioner, on 25 July 2000, resubmitted his document requests to Respondents. The County Attorney's Office for Montgomery County, on behalf of the records custodians, granted Petitioner's resubmitted requests. As described in a

---

6. On 18 January 1998, Petitioner requested documents from the Department. In addition, on 18 January and 30 January 1998, Petitioner submitted a request and supplemental request to the Board. On 11 May 1998, Petitioner requested documents from the Office of Procurement and, on 3 November 1999, Petitioner requested documents from the Ethics Commission.

letter to Petitioner from the Chief of the Division of General Counsel in the County Attorney's Office, dated 28 August 2000,

[a]lthough the original decision to deny [Petitioner] access to these documents was justified under the circumstances at the time of [Petitioner's] earlier [M]PIA requests, recent press coverage has generated the potential for larger public concern arising over the 1997 liquor store procurement, and has shifted the analysis concerning whether release of the previously denied documents to [Petitioner] would not be in the public interest. Because they have concluded that releasing these documents will help the general public better understand what transpired under the liquor store procurement, the Office of Procurement, the Board of License Commissioners, and the Department of Liquor Control have authorized this officer to release those documents.

A pre-trial conference was held on 30 August 2000, at which the hearing judge agreed to the parties' request to bifurcate the proceedings. As described in Petitioner's pre-trial statement, the parties "agreed to jointly propose a bifurcated procedure ... to focus on the threshold issue of whether the interposed [M]PIA exemptions [we]re proper." Pursuant to that procedure, "[a]fter oral argument and the Court's review and ruling on the validity of the exemptions, subsequent proceedings consistent with that ruling would follow, including proceedings as appropriate to establish [Respondents'] liability for damages."

On 13 October 2000, Respondents filed a motion for summary judgment. In that motion, Respondents argued that the Department was " 'immune from all suits for damages' " (quoting Md.Code (1998 Repl.Vol.), Courts and Judicial Proceedings Art., § 5–504) and maintained, therefore, that the Circuit Court "need not address whether the [Department's] asserted exemptions to disclosure of the documents encompassed in [Petitioner's] ... [M]PIA request were appropriate because it would only be rendering an advisory opinion." Alternatively, Respondents addressed the propriety of their decisions to withhold certain documents from Petitioner and requested

that the Circuit Court uphold those decisions "as reasonable and justified."

Petitioner filed a cross-motion for summary judgment. In that motion, Petitioner sought an order that all withheld documents "be released immediately" and, as to released documents, Petitioner sought an "award of attorney's fees and actual and punitive damages in accordance with the [M]PIA for [Respondents'] willful and knowing refusal to release the[ ] non-exempt documents." Replying to Respondents' argument that the Circuit Court need not address the Department's exemptions to disclosure of the documents, Petitioner contended that "there [wa]s no basis to find that the [Department's] immunity from 'suits for damages' nullifies the [Department's] exposure to a penal assessment of 'counsel fees' and 'litigation costs' under the [M]PIA." Petitioner also argued that Montgomery County Charter, § 505 waived "the permissible [M]PIA exemptions asserted by" the Department and, therefore, maintained that the Department never had "a basis to withhold the documents at issue."

At the start of the hearing on Respondents' motion for summary judgment, held on 30 October 2000, the Circuit Court addressed the disputed immunity of the Department. As in their motion for summary judgment, Respondents argued that the Department was immune from suit and that, therefore, "there really [wa]s no need to decide or discuss those specific documents [withheld by the Department] and the justifications for their exemption from disclosure ... because the issue [wa]s advisory." Petitioner, on the other hand, maintained that to construe the Department's "immunity to prevent statutorily imposed quasi-penal sanctions such as attorneys' fees [and] actual and punitive damages" would invalidate "the guts, the teeth of the [M]PIA." The Circuit Court, after hearing these arguments, concluded that "[d]amages are damages, whether they are attorneys' fees or compensatory or whatever they are, and ... read into [§ 5–504] that they [ (the Department) ] do have, in fact, that immunity."

The Circuit Court proceeded to consider the propriety of the decisions of the Board, the Office of Procurement, and the Ethics Commission to withhold certain documents from Petitioner. In so doing, the Circuit Court ruled that the language of Montgomery County Charter, § 505 did "not indicate an intent to waive attorney/client privilege." As a result, the Circuit Court determined that four documents were properly withheld by the Board pursuant to the attorney-client privilege.[7] In addition, the hearing judge also concluded that the Ethics Commission properly withheld one document as a deliberative interagency memorandum[8] and that the Office of Procurement properly withheld one document that was beyond the scope of Petitioner's request. On the other hand, the hearing judge ruled that the Ethics Commission and the Office of Procurement each withheld improperly one document. With regards to the propriety of the Department's withholding of nineteen documents, the Circuit Court made the following ruling:

---

7. MPIA § 10-615(1) provides that a "custodian shall deny inspection of a public record or any part of a public record" if "by law, the public record is privileged or confidential." In *Harris v. Baltimore Sun*, 330 Md. 595, 604-05, 625 A.2d 941, 945 (1993), we explained that if a "requested public record is 'information relating to representation of a client,' which if disclosed by the attorney, would place the attorney in violation of" Maryland Rule of Professional Conduct 1.6 ("Confidentiality of Information") "the information is confidential under § 10-615(1) and not to be produced under the Act."

8. The "permissible denials" section of the MPIA states, in part, that "[u]nless otherwise provided by law, if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest," MPIA § 10-618, the "custodian may deny inspection of any part of an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit." MPIA § 10-618(b). We explained in *Office of the Governor*, 360 Md. at 551, 759 A.2d at 266, that

> [the] permissible exemption for interagency and intra-agency letters or memoranda to some extent reflects that part of the executive privilege doctrine encompassing letters, memoranda or similar internal government documents containing confidential opinions, deliberations, advice or recommendations from one governmental employee or official to another official for the purpose of assisting the latter official in the decision-making function.

[I]n view of the Court's ruling that the [Department] has immunity as does its custodian, the Court has not reviewed whether or not these particular documents should or should not have been supplied under the requests for information and has made no decision on the theory that it is unimportant since the Court has ruled that the [Department] has immunity as does its custodian.

Obviously, if the Court is in error and it comes back then the Court would be required to review it.

On 17 January 2001, the Circuit Court heard Petitioner's cross-motion for summary judgment seeking an award of counsel fees and costs. At the start of the hearing, the hearing judge articulated the "substantive test" for determining whether an individual is entitled to counsel fees and costs under the MPIA. According to the hearing judge, "there were three issues: Was the plaintiff a substantially prevailing party under the [MPIA]? If the plaintiff was a substantially prevailing party, is the plaintiff eligible for attorneys' fees and costs? And is the plaintiff thereafter entitled to the same?" As to whether the plaintiff was "a substantially prevailing party," the Circuit Court noted three important considerations— "whether the lawsuit was required to gain the information, whether there was a nexus between the lawsuit and the release of the information," and whether the documents it found to be improperly withheld were "key documents." Under the entitlement issue, the Circuit Court identified three sub-issues: (1) "Was there a public benefit from [Petitioner's] case versus a private benefit to the plaintiff?"; (2) What was the nature of Petitioner's interest in the release of the records?; and (3) "Did the Government and its four agencies have a reasonable basis for withholding the record?" [9]

After hearing oral arguments, the Circuit Court announced the following conclusions:

---

**9.** *See infra* pages 298–99 (reiterating and explaining the relevant considerations in determining whether an individual is entitled to counsel fees and costs under the MPIA).

As to the first issue; namely, was [Petitioner] a substantially prevailing party under the Maryland Public Information Act, the Court believes that the lawsuit can be regarded as necessary to gain the information.

. . . .

The Court believes that there was a nexus between the lawsuit and the release of the information of the documents in the late summer of 2000.

. . . .

Finally, the Court accepts that the score sheets . . ., documents for the 1997 liquor store procurement, were "key" documents because they revealed to some degree the basis for the evaluation of each proposal.

As to the second issue, [Petitioner] does become "eligible" for attorneys' fees and costs since by substantially prevailing in his lawsuit with regards to production of the key documents.

. . . .

The third issue, though, is the critical issue; namely, [Petitioner's] entitlement to attorneys' fees and costs.

. . . .

[T]he Court finds that there was a public benefit, but it is the Court's belief that the public benefit from this lawsuit was marginal at best.

Now in the next issue, the Court finds that [Petitioner] really had little interest in the release of the records because he was the fourth bidder out of the sixth bidder and was not going to improve his rank to the extent that any release of documents was going to be meaningful to him in securing any operation of a County liquor store.

The final issue is, Did the Government and its four agencies have a reasonable basis for withholding the record. The arguments go back and forth on this issue, but the Court notes that the Ethics Commission and the procurement agency both sought legal advice from the Office of the County Attorney, received the legal advice and literally followed it.

. . . .

The Court notes that it earlier held that the [Department] was immune and that therefore there was a reasonable basis in withholding any of the documents that were sought from the [Department].

The [Board] was not ordered to produce any documents to the best of the Court's recollection unless there was a reasonable basis for withholding exhibits 31 through 34.[10]

So finally, gentlemen, under the *Kerwin* [sic] *versus Diamondback* analysis, the Court, in the exercise of its discretion, does not find, having answered all of the issues, that [Petitioner] is entitled to attorneys' fees and costs and dismisses its motion for award of attorneys' fees and costs.

Petitioner filed a timely appeal to the Court of Special Appeals. In its brief, Petitioner maintained that "the trial court's exercise of discretion was flawed because two of its underlying rulings were not legally correct." Specifically, Petitioner argued that the Circuit Court incorrectly ruled that the Department "was immune to an award of counsel fees" under Md.Code (1998 Repl.Vol.), Courts and Judicial Proceedings Art., § 5–504, and that "the attorney-client privilege and deliberative privilege (as applied to letters and memoranda) was not waived" by Montgomery County Charter, § 505 and could be asserted by Respondents. Therefore, according to Petitioner, "the proper remedy [wa]s to remand for reconsideration on the issue of attorney fees."

Respondents, on the other hand, maintained that "the language of [Md.Code (1998 Repl.Vol.), Courts and Judicial Proceedings Art., § 5–504] plainly reflects a legislative intent that no suits for damages or liability could be pursued against the Department," including a suit for counsel fees. In the alternative, Respondents posited that "[e]ven without immunity," the fact that the Department "acted no differently than the other agencies . . . fully supported a conclusion that the Department

---

10. The Circuit Court previously found that exhibits 31 through 34 were withheld properly by the Board pursuant to the attorney-client privilege. *See supra* pages 285–86.

... did not willfully violate the MPIA." Thus, "[a]n award of costs, including attorney's fees, did not become appropriate in this instance." Finally, Respondents argued that Montgomery County Charter, § 505 did not "eliminate executive privilege and attorney-client privilege," but, in any event, observed that the Court "need not reach a definitive decision on the meaning of the charter, but only whether the County's interpretation of the Charter was reasonable."

In an unreported opinion, the Court of Special Appeals affirmed the judgment of the Circuit Court. On the issue of the Department's immunity, the intermediate appellate court noted that "subsection (2) of section 5–504 ma[de] it clear that the intent of the Legislature was to grant general immunity to the [Department], except for suits for the enforcement of contracts." Thus, it resolved that the Circuit Court correctly concluded that the Department was immune from a suit for counsel fees and costs. Regarding the meaning of Montgomery County Charter, § 505, the Court of Special Appeals deemed it unnecessary "definitively [to] interpret the charter provision." According to the intermediate appellate court, because Petitioner was challenging the denial of counsel fees and costs, rather than damages, the "specific question before [it wa]s whether [Respondents] had a reasonable basis in law to withhold the documents." Based on its reading of § 505, a "reasonable interpretation of that section is that it does not waive privileges existing at common law or by statute." Therefore, the Court of Special Appeals found no abuse of discretion.

## II.

### A.

Generally, the decision whether to award counsel fees to an eligible party under the MPIA rests within the sound exercise of discretion by the trial judge. *See Kirwan v. The Diamondback*, 352 Md. 74, 95–96, 721 A.2d 196, 206 (1998) (noting that in a case involving the MPIA, "the award of counsel fees to a prevailing complainant is within the discre-

tion of the trial court."); *Kline v. Fuller,* 64 Md.App. 375, 388, 496 A.2d 325, 332 (1985) (explaining in a case involving the MPIA that, "[a] decision on whether to award counsel fees to an eligible party resides in the discretion of the trial judge."). Thus, absent a showing of abuse of that discretion or a predicate erroneous legal conclusion, the determination to award or deny such fees generally will not be disturbed on appeal.

In this case, prior to exercising its discretion in determining whether to award Petitioner counsel fees, the Circuit Court made two legal determinations. Specifically, it found that the Department was immune from liability for an award of counsel fees under Md.Code (1998 Repl.Vol.), Courts and Judicial Proceedings Art., § 5–504, and it refused to interpret Montgomery County Charter, § 505 as waiving the privileges permitting the withholding of certain documents protected in the MPIA. Arguably, had the Circuit Court ruled differently on these issues, it may have had a larger number of improperly withheld documents before it for consideration in its exercise of discretion regarding the counsel fees. In light of the potential effect that the Circuit Court's preliminary rulings on Md.Code (1998 Repl.Vol.), Courts and Judicial Proceedings Art., § 5–504 and Montgomery County Charter, § 505 may have had on its subsequent discretionary determination to deny Petitioner an award of counsel fees, our review in this matter appropriately focuses on the Circuit Court's conclusions of law regarding § 5–504 and § 505. We review those rulings *de novo. See J.L. Matthews, Inc. v. Md.–Nat'l Capital Park and Planning Comm'n,* 368 Md. 71, 92, 792 A.2d 288, 300 (2002) ("[W]hen the trial judge's ruling involves a legal question, we review the trial court's ruling *de novo.*") (citing *Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609, 612 (2002) ("[O]ur Court must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review.") (citations omitted)); *In re Mark M.,* 365 Md. 687, 704–05, 782 A.2d 332, 342 (2001) (finding that where a "trial court has committed an error of law, [it is] to be reviewed by appellate courts *de novo*").

### B.

Maryland Code (1998 Repl.Vol.), Courts and Judicial Proceedings Art., § 5–504 (" § 5–504") provides that "[t]he Department of Liquor Control for Montgomery County shall be . . . (1) Immune from all suits for damages; and (2) Subject to suit only for the enforcement of contracts made by the Department of Liquor Control for Montgomery County." Pursuant to § 10–623(d) of the MPIA, however,

> [a] defendant governmental unit is liable to the complainant for actual damages and any punitive damages that the court considers appropriate if the court finds that any defendant knowingly and willfully failed to disclose or fully to disclose a public record that the complainant was entitled to inspect under . . . Part III of this subtitle [(the MPIA)].

In addition, as provided in § 10–623(f) of the MPIA, "[i]f the court determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees and other litigation costs that the complainant reasonably incurred."

Respondents assert that the immunity "from all suits for damages" granted to the Department in § 5–504 includes immunity from actual and punitive damages, *see* MPIA § 10–623(d), and counsel fees, *see* MPIA § 10–623(f). According to Respondents, "the more specific grant of immunity from liability and damages to the Department . . . supercedes the general remedies available under the MPIA." Petitioner, on the other hand, points out that, pursuant to the "American Rule," " 'damages' sought in a suit do not include attorney fees." Petitioner contends that "[i]t would not be unreasonable for the Legislature to reserve to the courts the ability to regulate the activities of the Department . . . via an assessment of counsel fees in the event of its failure to comply with the MPIA." For the following reasons, we agree with Petitioner.

 In determining the meaning of "damages" in § 5–504, we are guided by the " 'cardinal rule of statutory interpretation' " that we endeavor to " 'ascertain and effectuate the intention of the legislature.' " *Md. Dep't of the Env't v.*

*Underwood,* 368 Md. 160, 175, 792 A.2d 1130, 1139 (2002) (quoting *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995) (citation omitted)). In that attempt, "our first recourse is to the words of the statute, giving them their ordinary and natural import." *Garnett v. State,* 332 Md. 571, 585, 632 A.2d 797, 804 (1993) (citing *Fairbanks v. McCarter,* 330 Md. 39, 46, 622 A.2d 121, 125 (1993); *NCR Corp. v. Comptroller,* 313 Md. 118, 124, 544 A.2d 764, 767 (1988)). Thus, " 'where statutory provisions are clear and unambiguous, no construction or clarification is needed or permitted, it being the rule that a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation.' " *Giant Food, Inc. v. Dep't of Labor, Licensing and Regulation,* 356 Md. 180, 189, 738 A.2d 856, 861 (1999) (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73–75, 517 A.2d 730, 731–32 (1986)).

■ Pursuant to the eponymous "American Rule," as a "matter of substantive law . . ., damages do not include counsel fees." *Hess Constr. Co. v. Bd. of Educ. of Prince George's County,* 341 Md. 155, 165, 669 A.2d 1352, 1357 (1996). *See also Megonnell v. United Services Auto. Ass'n,* 368 Md. 633, 659, 796 A.2d 758, 774 (2002) ("This State adheres to the 'American Rule' which generally requires that each party be responsible for their own counsel fees."); *St. Luke Evangelical Lutheran Church, Inc. v. Smith,* 318 Md. 337, 344, 568 A.2d 35, 38 (1990) (explaining that the "American Rule" "prohibits the prevailing party in a lawsuit from recovering his attorney's fees as an element of damages") (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)). The "American Rule" "evolved from the English Rule," under which "a successful plaintiff could obtain the costs of litigation as an element of damages." *St. Luke,* 318 Md. at 344, 568 A.2d at 38. As we explained in *St. Luke,*

> [t]he English Rule was popular in America before the Revolution. Originally, the pre-colonial statutes which fixed the scale of recoverable court costs satisfied a substantial portion of the attorney's fees incurred by a successful

litigant. This was so even though local statutes rigidly limited the amount recoverable as attorney's fees.

Of course, nowhere in this country have statutorily-fixed attorney's fees been revised to keep pace with the fall in the value of money. Such legislative reluctance to keep pace suggests that the principle of full compensation for litigation expenses never firmly took hold in this country. This may best be explained by a historic distrust of lawyers prevalent throughout the colonial era, and a then growing preference of the organized bar for fee schedules set by a free market and not hostile legislatures.

*St. Luke*, 318 Md. at 345, 568 A.2d at 38–39 (footnote omitted) (citations omitted). Exceptions to the "general rule that counsel fees, incurred by the prevailing party in the very litigation in which that party prevailed, are not recoverable as compensatory damages against the losing party" are "quite rare," but do exist. *Hess*, 341 Md. at 160, 669 A.2d at 1354. For example, counsel fees may be awarded when (1) "parties to a contract have an agreement to that effect"; (2) "there is a statute which allows the imposition of such fees"; (3) "the wrongful conduct of a defendant forces a plaintiff into litigation with a third party"; and (4) "a plaintiff is forced to defend against a malicious prosecution." *St. Luke*, 318 Md. at 345–46, 568 A.2d at 39 (citations omitted).

While it is true that the "American Rule" may not have been referred to as such in the Court's jurisprudence at the time § 5–504 was enacted,[11] Petitioner correctly observes that

---

11. The Maryland General Assembly first enacted the Montgomery County Department of Liquor Control immunity provision in 1941. At that time, the section provided:

> The Liquor Control Board for Montgomery County shall be immune from all suits for damages and shall be subject to suit only for the enforcement of contracts made by it.

Chapter 927, § 1 of the Acts of 1941. *See also* Md.Code (1951), Art. 2B § 158(b). It appears that we first utilized the moniker "American Rule" in 1990 to describe the proposition that damages generally do not include counsel fees. *See St. Luke Evangelical Lutheran Church, Inc. v. Smith*, 318 Md. 337, 344, 568 A.2d 35, 38 (1990) (quoting

this Court nonetheless had recognized the principles underlying the rule at the time of the original immunity enactment. At the beginning of the twentieth century, we recited the "general rule" that "costs and expenses of litigation, other than the usual and ordinary Court costs, are not recoverable in an action for damages . . .," *McGaw v. Acker, Merrall and Condit Co.*, 111 Md. 153, 160, 73 A. 731, 734 (1909), and, as early as 1903, it was "well settled in this State tha[t] the costs of a suit d[id] not, apart from statutory direction[,] include the counsel fees of the successful party." [12] *Singer v. The Fid. and Deposit Co. of Md.*, 96 Md. 221, 224, 54 A. 63, 63 (1903) (citing *Wallis v. Dilley*, 7 Md. 237, 249 (1854); *Corner v. Mackintosh*, 48 Md. 374, 390 (1878); *Wood v. State*, 66 Md. 61, 68, 5 A. 476, 478 (1886)). As observed in *St. Luke*, 318 Md. at 346, 568 A.2d at 39, "[m]ovement *away* from a strict application of the American Rule began in this country as early as the 19th century, when legislatures launched [statutory] attacks against it." (Emphasis added). In the absence of any indication to the contrary, we presume that the Legislature was mindful in 1941, at the time it enacted the predecessor of § 5–504, of the generally accepted proposition that counsel fees are different than damages ordinarily.

In support of this, we note that in the years subsequent to the enactment of § 5–504, the Article containing the provision was amended a number of times, but the actual language of the provision was never amended substantively. *See* Chapter

---

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)).

**12.** Likewise, according to the Supreme Court, the rule "has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). It "first announced that rule in *Arcambel v. Wiseman*, [3 U.S. 306, 1 L.Ed. 613] (1796), and adhered to it in later decisions." *Fleischmann*, 386 U.S. at 717–18, 87 S.Ct. at 1407, 18 L.Ed.2d 475 (citing *Hauenstein v. Lynham*, 100 U.S. [10 Otto] 483, 25 L.Ed. 628 (1880); *Stewart v. Sonneborn*, 98 U.S. [8 Otto] 187, 25 L.Ed. 116 (1879); *Oelrichs v. Spain*, 82 U.S. [15 Wall] 211, 21 L.Ed. 43 (1872); *Day v. Woodworth*, 13 How. 363, 54 U.S. 363, 14 L.Ed. 181 (1852)).

501, Acts of 1947 ("revising and re-codifying the alcoholic beverages laws of th[e] State, and generally rearranging and simplifying all laws having to do with alcoholic beverages"); Chapter 956, Acts of 1978 (amending various subsections of the "Alcoholic Beverages" Article); Chapter 546, § 3 of the Acts of 1990 (enumerating separately the Department's immunity from all suits for damages and its capacity to be sued for the enforcement of contracts made by it); Chapter 14, § 9 of the Acts of 1997 (renumbering sections and placing them under new subtitles). Although not wholly dispositive of this issue, the Legislature's failure to amend § 5–504, especially following our explicit adoption of the "American Rule," further indicates to us the legislature's intention that "damages" as used in § 5–504 not include counsel fees. *See NCR Corp.*, 313 Md. at 126, 544 A.2d at 767 ("The 'General Assembly is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute . . . .' ") (quoting *Bd. of Educ., Garrett County v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185, 1189 (1982) (omission in original)). *Cf. State v. Bell,* 351 Md. 709, 721, 720 A.2d 311, 317 (1998) (quoting *Demory Bros. v. Bd. of Pub. Works,* 273 Md. 320, 326, 329 A.2d 674, 677 (1974), for the proposition that the rejection of an amendment by the Legislature " 'strengthens the conclusion that the Legislature did not intend to achieve the results that the amendment would have achieved, if adopted.' "); *NCR Corp.,* 313 Md. at 125, 544 A.2d at 767 ("While a committee's rejection of an amendment is clearly not an infallible indication of legislative intent, it may help our understanding of overall legislative history.").

Respondents argue that our interpretation of "damages" as used in § 5–504 should be influenced by our holding in *A.S. Abell Publ'g Co. v. Mezzanote,* 297 Md. 26, 40–41, 464 A.2d 1068, 1075 (1983), in which we concluded that the Maryland Insurance Guaranty Association ("the MIGA") could not be assessed counsel fees and costs under the MPIA. The determination in that case, however, was dependant on Md.Code (1957, 1979 Repl.Vol., 1982 Cum.Supp.), Art. 48A, § 517 (re-

pealed by Chapter 35, Acts of 1997), which provided that "[t]here shall be no *liability* on the part of and no cause of action of any nature shall arise against" the MIGA "for any action taken by them in the performance of their powers and duties under this subtitle." (Emphasis added). Addressing Respondents' reliance on this case, the Court of Special Appeals noted that *Mezzanote* "is not controlling because the immunity statute ... granted immunity from 'liability' whereas [§ ] 5–504 grants immunity from 'all suits for damages.'" We agree with that analysis.

■ Therefore, the Department is not immune, based on § 5–504, from an award of costs, including counsel fees, under the MPIA. In this case, after ruling that the Department was immune from suits for counsel fees, the Circuit Court explicitly chose not to consider the propriety of the Department's withholding of nineteen documents from Petitioner. *See supra* pages 285–86. Arguably, had the trial court determined that any of those nineteen documents were withheld improperly, its subsequent determination regarding counsel fees may have been affected. *See infra* pages 298–99. For that reason, we must remand this case to the Circuit Court for further consideration.

## C.

Pursuant to the MPIA, there are some records for which the custodian [13] *must* deny inspection. *See* MPIA §§ 10–615–10–617 (enumerating those records that the custodian "shall deny"). For example, as provided in MPIA § 10–615,

[a] custodian shall deny inspection of a public record or any part of a public record if:

---

13. "Custodian" means "the official custodian" or "any other authorized individual who has physical custody and control of a public record." MPIA § 10–611(c). The "official custodian" is "an officer or employee of the State or of a political subdivision who, whether or not the officer or employee has physical custody and control of a public record, is responsible for keeping the public record." MPIA § 10–611(d).

(1) by law, the public record is privileged or confidential; or

(2) the inspection would be contrary to:

 (i) a State statute;

 (ii) a federal statute or a regulation that is issued under the statute and has the force of law;

 (iii) the rules adopted by the Court of Appeals; or

 (iv) an order of a court of record.

As delineated in MPIA § 10–618, there are also records for which the custodian *may* deny inspection, "if the custodian believes that such inspection would be contrary to the public interest." *Office of the Governor v. Washington Post,* 360 Md. 520, 550–51, 759 A.2d 249, 266 (2000). Relevant here, MPIA § 10–618(b) mandates that, "the custodian may deny inspection by the applicant of . . . any part of an interagency or intra-agency letter or memorandum that would not be available by law to a private party in litigation with the unit." [14]

At issue in this case is the effect of the "Right to Information" section of the Montgomery County Charter on the availability to the custodian of Montgomery County's public records of the MPIA's mandatory and permissible denials. *See* Montgomery County Charter, § 505 ("505"). It provides that:

[a]ny person shall have the right to inspect any document, except confidential police records, personnel records, or records of a confidential private nature as defined by law. The Council may adopt reasonable regulations for such inspection. A certified copy of any such document shall be

---

**14.** Also subject to "permissible denials" under MPIA § 10–618 are public records regarding examinations (§ 10–618(c)), research projects of an institution of the State or of a political subdivision (§ 10–618(d)), real property appraisals (§ 10–618(e)), records of investigations (§ 10–618(f)), site-specific locations of certain plants, animals or property (§ 10–618(g)), information relating to an invention owned in whole or in part by a State public institution of higher education (§ 10–618(h)), and information disclosing or relating to a trade secret, confidential commercial information, or confidential financial information of the Maryland Technology Development Corporation (§ 10–618(i)).

furnished upon payment of a reasonable fee established by such regulations. This section shall not apply to a document or other material obtained or prepared in anticipation of litigation or for use in legal proceedings to which the County is a party.

*Id.* According to Petitioner, this section creates "much narrower" exemptions from disclosure "than those available under the MPIA," and, "in effect[,] waives the broader, permissible exemptions under the MPIA," which Petitioner contends includes "the inter/intra-agency memoranda exemption and the attorney-client privilege." [15] Respondents, on the other hand, maintain that "[a]n analysis of § 505 in the context of the charter as a whole, coupled with a long and consistent County practice of asserting executive privilege and attorney-client privilege, supports the conclusion that § 505 does not waive these critically important protections." In addition, they argue that we "need not reach a definitive meaning of the charter, but only whether [Respondents'] interpretation of the law was reasonable, because the analysis conducted for an award of attorney's fees includes a determination of whether the agency's denial had a reasonable basis in law." *See Kirwan,* 352 Md. at 96, 721 A.2d at 207 (identifying "whether the agency's withholding of the information had a reasonable basis in the law" as a factor in determining whether to award counsel fees).

 To begin, contrary to Respondents' position, our review in this matter is not limited to whether Respondents'

---

**15.** For the sake of clarity, we note that Petitioner's contention that the attorney-client privilege qualifies as a permissible denial is not based on the privilege's treatment in the statutory scheme of the MPIA, but rather, as Petitioner explains in his brief, on the notion that "it is within any client's authority (here the Montgomery County government) to waive the privilege." As discussed *infra,* however, the attorney-client privilege falls under the mandatory denials of MPIA § 10–615(1), while the attorney work-product doctrine may be invoked as a permissible denial under MPIA § 10–618(b). Therefore, in those circumstances in which a record may be protected by the attorney-client privilege of MPIA § 10–615(1), Petitioner's description of the attorney-client privilege as "permissible" may be misleading.

interpretation of § 505 was "reasonable." Pursuant to MPIA § 10–623(f), after a trial court determines that a complainant "substantially prevailed" with respect to the records it sought, it "may" award counsel fees. As the Court of Special Appeals explained in *Kline,* 64 Md.App. at 385, 496 A.2d at 330, "[a]lthough an actual judgment in claimant's favor is not required" to meet the "threshold of substantial prevailance," "it must be demonstrated that prosecution of the lawsuit could reasonably be regarded as having been necessary in order to gain release of the information," that "there was a causal nexus between the prosecution of the suit and the agency's surrender of the requested information," and that the complainant recovered "key documents." Then, "[o]nce the court determines that the complainant has substantially prevailed, that litigant becomes 'eligible' but not 'entitled' to an award of reasonable attorney fees and costs." *Id.* In determining whether to award counsel fees, the trial court may consider " 'the benefit to the public, if any, derived from the suit,' " " 'the nature of the complainant's interest in the released information,' " and " 'whether the agency's withholding of the information had a reasonable basis in the law.' " *Kirwan,* 352 Md. at 96, 721 A.2d at 207 (quoting *Kline,* 64 Md.App. at 386, 496 A.2d at 331 (citation omitted)).

In this case, pursuant to its ruling that the language of § 505 did not indicate an intent to waive the attorney-client privilege or, by implication, the interagency memorandum exception, the Circuit Court concluded, in part, that the Board properly withheld four documents (attorney-client privilege) and that the Ethics Commission properly withheld one document (deliberative interagency memorandum). Arguably, had the Circuit Court concluded that the Board and the Ethics Commission were not entitled to withhold those documents on the asserted bases, its determination as to whether to award Petitioner counsel fees may have been affected. For instance, while a "reasonable basis in the law for withholding" documents does not require that an agency be legally correct in its withholding (*see, e.g., Kirwan,* 352 Md. at 96–97, 721 A.2d at 207 (finding that a University's withholding of information was

"not entirely unjustified" where the definition of " 'education records' in the federal Family Educational Rights and Privacy Act is broad," there "have been no prior reported Maryland cases dealing with the particular issues" in the case, there "is not very much case-law elsewhere concerning the meaning" of the term, and "the federal agency which administers the federal statute supported the University as to some of the records involved")), the Circuit Court may not have concluded so readily that Respondents had a "reasonable basis in the law for withholding" the documents here had it interpreted § 505 as waiving the privileges invoked by Respondents. For that reason, we shall not focus simply on whether Respondents' interpretation of § 505 was "reasonable," but shall interpret § 505.

In ascertaining the meaning of Montgomery County Charter, § 505, we begin by examining the plain meaning of its terms. *See Garnett,* 332 Md. at 585, 632 A.2d at 804 (explaining that in interpreting a statute "our first recourse is to the words of the statute, giving them their ordinary and natural import.") (citations omitted). *See also supra* pages 291–93. As enumerated in § 505, "[a]ny person shall have the right to inspect any document, except confidential police records, personnel records, or records of a confidential private nature as defined by law." Based on the plain meaning of "confidential police records" and "personnel records," it is clear that the mandatory and permissible denials provided for in the MPIA are not incorporated, in their entirety, under either of those § 505 exemptions. Although there may be some overlap between the denial provisions in the MPIA and the personnel and confidential police record exemptions under § 505 (*see, e.g.,* MPIA § 10–617(e) (pertaining to the home addresses and telephone numbers of employees "of a unit or instrumentality of the State or of a political subdivision"); MPIA § 10–618(f) (regarding records of investigations conducted by "the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff")), the majority of the records covered by the mandatory and permissible denials in the

MPIA do not appear to qualify as personnel or confidential police records under § 505.

In like manner, "records of a confidential private nature" also may not be interpreted to include the mandatory and permissible denials of the MPIA. Specifically, due to the placement of the words "confidential" and "private" together in § 505, it is apparent that the Montgomery County Council (and electorate) intended that those terms be assigned separate meanings. As such, we are precluded from interpreting "private" as simply a synonym of "confidential." The legislative history of § 505 supports that conclusion and illuminates the intended meaning of "private." As described in the 1968 "Commentary Upon Proposed Charter" prepared by the Charter Review Commission, § 505

> is similar to Article VIII, Section 3 of the present charter.[16] The limitation to taxpayers of the right to inspect has been eliminated. Additional language has been added to make it clear that the right to information does not extend to personnel records or the records of a confidential, private nature as may be defined by law. An example of information in the latter category would be individual income tax returns.

---

**16.** In 1965, Article VIII, Section 3 of the Montgomery County Charter provided:

> All books, accounts, and papers of any department, except police books and papers and individual case records, shall at all times be open to the inspection of any taxpayer, subject to such reasonable rules and regulations in regard to the time and manner of such inspection as the county manager with the approval of the county council in executive session may make. Public inspection of police records may be permitted to the extent authorized by the county council. In case such inspection·shall be refused, such taxpayer, on his sworn petition, describing the particular book, account or paper that he desires to inspect, may, upon notice of not less than one day, apply to any judge of the circuit court for an order that he be allowed to make such inspection as such judge shall be [sic] his order authorize. This section shall not apply to any papers prepared by or for counsel for use in actions or proceedings to which the county is a party or for use in any investigation authorized by or under this Charter.

*1968 Commentary Upon Proposed Charter*, Charter Review Commission (Committee on Style), p. 37 (10 July 1968). Based on this commentary, it is clear that the County Council intended that the phrase "records of a confidential private nature" relates to confidential records regarding an individual's private matters, such as individual income tax returns, rather than to confidential records regarding, for instance, governmental or commercial information. As such, absent any overlap between the mandatory and permissible denials of the MPIA and the "records of a confidential private nature" exemption of § 505, those denials do not appear to be available under the exemption of § 505.

▮▮▮▮ Pursuant to "[t]he Maryland Constitution, Article XI-A, § 1," however, a "county charter shall be subject to the public general laws of Maryland." *Montgomery County v. Bd. of Supervisors of Elections*, 311 Md. 512, 514, 536 A.2d 641, 642 (1988) (citations omitted). Thus, "[i]f a provision of a county charter, including a charter amendment, conflicts with any public general law, the charter provision may not be given effect." *Id. See also Tyma v. Montgomery County*, 369 Md. 497, 517 n. 16, 801 A.2d 148, 160 n. 16 (2002) ("A local law authorized pursuant to the Express Powers Act, nevertheless, may be preempted by conflict, express preemption, or implied preemption."); *Montrose Christian Sch. Corp. v. Walsh*, 363 Md. 565, 579, 770 A.2d 111, 119 (2001) (" '[A] local government ordinance which conflicts with a public general law enacted by the General Assembly is preempted and thus is invalid.' ") (quoting *Coalition for Open Doors v. Annapolis Lodge*, 333 Md. 359, 379, 635 A.2d 412, 422 (1994)). " 'A local ordinance is pre-empted by conflict when it prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law.' " *Walsh*, 363 Md. at 580, 770 A.2d at 120 (quoting *Talbot County v. Skipper*, 329 Md. 481, 487 n. 4, 620 A.2d 880, 882 n. 4 (1993)). *See also Annapolis v. Annapolis Waterfront Co.*, 284 Md. 383, 391, 396 A.2d 1080, 1085 (1979) (" '[A] conflict exists only when a local law prohibits something permitted by the legislature, or permits something prohibited by the legislature.' ") (quoting *Mur-*

*ray v. Dir. of Planning,* 217 Md. 381, 389, 143 A.2d 85, 89 (1958)).

 In this case, therefore, although the language of § 505, at firsts blush, appears to waive both the mandatory and permissible denials of the MPIA,[17] we do not interpret it so broadly. Specifically, in so far as the MPIA explicitly prohibits the release of certain public records through its mandatory denials, *see* MPIA §§ 10–615–10–617, we may not interpret § 505 as permitting their release. For example, where MPIA § 10–615(2) mandates that a custodian "deny inspection of a public record" if the "inspection would be contrary to" "a State statute," "a federal statute or a regulation that is issued under the statute and has the force of law," "the rules adopted by the Court of Appeals," or "an order of a court of record," Montgomery County cannot permit, by waiver of its interests, the release of those records in the control of a County custodian.

 Nevertheless, the availability to Respondents of the mandatory denials of the MPIA is not without limitation. Relevant here, under MPIA § 10–615(1), public records subject to the attorney-client privilege "shall" be denied. *See* MPIA § 10–615(1) (mandating that a custodian "shall deny inspection of a public record" if "by law, the public record is privileged or confidential"); *Harris v. Baltimore Sun,* 330 Md. 595, 604–05, 625 A.2d 941, 945 (1993) ("If the requested public record is 'information relating to representation of a client,' which, if disclosed by the attorney, would place the attorney in violation of M[aryland Rule of Professional Conduct] 1.6

---

**17.** Our use of the term "waiver" here is unrelated to the timing of the enactments of the MPIA and § 505. Specifically, although the MPIA was enacted two years after § 505 (*see* Montgomery County Charter, Editor's Note, p. 1 (explaining that the current County Charter was adopted at an election on 5 November 1968); *Office of the Governor,* 360 Md. at 533, 759 A.2d at 256 (noting that the MPIA was "originally enacted and codified in 1970")), that subsequent enactment does not negate the possibility that § 505 nonetheless could waive, by its terms, the MPIA. Our use of waiver here is not dependant on the order of adoption of the relevant enactments, but rather on an analysis of their contents and scope.

[("Confidentiality of Information")], the information is confidential under § 10–615(1) and not to be produced under the Act."). It is recognized generally, however, that the attorney-client privilege may be waived by a party entitled to assert it, in this case, Montgomery County and its agencies. *See Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 691, 756 A.2d 526, 537 (2000) (explaining that waivers of the attorney-client privilege "are universally recognized limitations on client power to hold the privilege"); *E.I. du Pont de Nemours & Co. v. Forma–Pack, Inc.*, 351 Md. 396, 415, 718 A.2d 1129, 1138 (1998) (explaining that the attorney-client privilege may be waived). As we have explained, the language of § 505 appears to waive the County's ability to deny inspection of all records, "except confidential police records, personnel records, or records of a confidential private nature as defined by law." Although in some instances records subject to those three exemptions also may be protected under the attorney-client privilege, those exemptions do not include, by their terms, all records that may be protected by the attorney-client privilege. Thus, insofar as the attorney-client privilege may be waived by the individual or entity entitled to invoke that privilege, we find that the language of § 505, effectuates a limited waiver of that privilege.[18]

---

**18.** Obviously, if documents qualify as "a document or other material obtained or prepared in anticipation of litigation or for use in legal proceedings to which the County is a party," they would be exempted expressly from release under § 505, quite apart from any separate common law attorney-client privilege.

In addition, MPIA § 10–615(1) also prohibits the release of public records subject to the executive privilege. *See Office of the Governor*, 360 Md. at 557, 759 A.2d at 269 (explaining that if the records at issue in that case were "non-disclosable under the executive privilege doctrine, then such records or parts of records [we]re exempt from disclosure under § 10–615(1) of the Maryland Public Information Act"). Although not relevant here (because Respondents asserted executive privilege pursuant to the permissible interagency/intra-agency documents denial, *see* MPIA § 10–618(b)), to the extent the executive privilege may be waived (*see Hamilton v. Verdow*, 287 Md. 544, 570 n. 10, 414 A.2d 914, 928 n. 10 (1980) ("Although it is said that executive privilege may be waived, *United States v. Reynolds*, 345 U.S. [1,] 7, [73 S.Ct 528, 532, 97 L.Ed. 727 (1953)], there is very little case law in the

 The permissible denials of the MPIA are also subject to waiver by the County. Generally, while a County may not prohibit something permitted by State legislation or permit something prohibited by State legislation, the State "may permit" a County to exercise "concurrent" authority. *Annapolis Waterfront Co.*, 284 Md. at 391, 396 A.2d at 1085. As a general rule, " 'complementary municipal regulations are not struck down where they are in conformity with the plan or spirit of the State statutes.' " [19] *Annapolis Waterfront Co.*, 284 Md. at 392, 396 A.2d at 1086 (quoting *Reed v. Pres. of North East*, 226 Md. 229, 249–50, 172 A.2d 536, 545 (1961)). Relevant to the present case, it is well established that " 'the provisions of the [MPIA] reflect the legislative intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government.' " *Kirwan*, 352 Md. at 81, 721 A.2d at 199 (quoting *Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 73, 716 A.2d 258, 262 (1998) (quoting *Mezzanote*, 297 Md.

---

appellate courts with respect to waiver of an executive privilege claim.")), § 505 may also be interpreted as effectuating a waiver of that privilege as protected under MPIA § 10–615(1).

**19.** In *Annapolis v. Annapolis Waterfront Co.*, 284 Md. 383, 396 A.2d 1080 (1979), we upheld an amendment of the Annapolis City Charter permitting regulation, in addition to that provided in the Maryland Code by Port Wardens, of the construction of wharves and piers in Annapolis. In so doing, we observed that the "additional regulation" was "consistent with the purpose of" the state statute. *Annapolis Waterfront Co.*, 284 Md. at 392, 396 A.2d at 1085–86. We then explained,

> this case is analogous to *Rossberg v. State*, [111 Md. 394, 74 A. 581 (1909)], in which a municipal ordinance imposing greater penalties for possession or sale of cocaine than a state statute prohibiting the same acts was upheld as not repugnant to the state law; *Eastern Tar Products Corp. v. Tax Comm'n*, [176 Md. 290, 4 A.2d 462 (1939)], where a city ordinance requiring applications for a tax exemption to be filed at a particular date, not later than the time for revision and correction of tax lists was held valid, while the state law prescribed that such applications be filed by the time for revision, but not at a particular date; and *Reed v. Pres. of North East*, [226 Md. 229, 172 A.2d 536 (1961)], in which we upheld a municipal resolution requiring changes in the town charter to be published in two newspapers, when a state statute only required publication in one newspaper.
>
> *Annapolis Waterfront Co.*, 284 Md. at 392, 396 A.2d at 1086.

at 32, 464 A.2d at 1071)). We "have on several occasions explained that the provisions of the statute 'must be liberally construed . . . in order to effectuate the [MPIA's] broad remedial purpose.'" *Id.* (quoting *Mezzanote,* 297 Md. at 32, 464 A.2d at 1071). As a result, where the language of § 505 clearly forgoes the permissive denials provided in the MPIA, we do not contravene the spirit of the MPIA in interpreting § 505 as such. Pursuant to the principles of waiver and preemption, the determination of whether to provide individuals even greater access to public information than the MPIA envisions lies within Montgomery County's discretion as discussed *infra.*[20] *See Annapolis Waterfront Co.,* 284 Md. at 393,

---

**20.** As we have already recognized, there may be some overlap between the permissive denials of the MPIA and the personnel and confidential police record exemptions of § 505. For example, as provided in MPIA § 10–618(f),

> *Investigations.*—(1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:
>
> (i) records of investigations conducted by the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff;
>
> (ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or
>
> (iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff.
>
> (2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:
>
> (i) interfere with a valid and proper law enforcement proceeding;
>
> (ii) deprive another person of a right to a fair trial or an impartial adjudication;
>
> (iii) constitute an unwarranted invasion of personal privacy;
>
> (iv) disclose the identity of a confidential source;
>
> (v) disclose an investigative technique or procedure;
>
> (vi) prejudice an investigation; or
>
> (vii) endanger the life or physical safety of an individual.

A record subject to this permissible denial also may qualify for exemption as a "confidential police record" in § 505. The distinction to be made, however, is that Respondents, in withholding such a document, would be relying on the provisions of § 505, rather than on the MPIA.

In addition, it is also worth noting that MPIA § 10–618(b), the interagency/intra-agency exemption, has been interpreted to include information privileged under the attorney work product doctrine. *See Cranford v. Montgomery County,* 300 Md. 759, 773, 481 A.2d 221, 228 (1984). Generally, the work product doctrine "protects from discovery

396 A.2d at 1086 ("Municipalities are free to provide for additional standards and safeguards in harmony with concurrent state legislation.").

Although not dispositive in this case, the available history of the County government's prior interpretation regarding § 505 parallels our construction of that section. Section 505 of the Montgomery County Charter was ratified in 1968.[21] In 1980, twelve years subsequent to the enactment of § 505 and ten years subsequent to the enactment of the MPIA, the County Attorney's Office for Montgomery County, in a memorandum regarding the "types of County Executive's correspondence subject to public disclosure," addressed the interplay between the MPIA and § 505. Memorandum from the Office of the County Attorney for Montgomery County, Maryland, to the Chief Administrative Officer for Montgomery County, Maryland (7 February 1980) ("*1980 Memo*"). Relevant here, it correctly noted that "where the Charter provides disclosure policy supplemental to the State's pronouncements, th[o]se County level provisions are to be followed." *1980 Memo*, p. 2. In reference to § 505, it acknowledged that the discretionary disclosures available under the MPIA at that time "appear[ed] open to County level policy," and significantly, it indicated that "[i]t should be understood . . . that there is potential for refinement of County disclosure policy with re-

---

the work of an attorney done in anticipation of litigation or in readiness for trial." *E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 407, 718 A.2d 1129, 1134 (1998). In Montgomery County, however, while § 505 effectuates a general waiver of the permissible denials provided in MPIA § 10-618, it also specifically exempts from release "a document or other material obtained or prepared in anticipation of litigation or for use in legal proceedings to which the County is a party." Thus, in so far as a document qualifying as an attorney work product also qualifies for exemption under § 505, the custodian would be permitted to rely on § 505 in withholding that document.

21. An Editor's note at the beginning of the Montgomery County Charter states that, "[t]he current County Charter was adopted at an election held Nov. 5, 1968, and, as indicated by history notes accompanying amended sections, was amended by subsequent elections." There are no such history notes accompanying § 505. The language of that section has not changed since its original enactment.

spect to discretionary disclosures of the State Act under Section 505 of the Charter." *1980 Memo*, p. 4.

In more recent years, concerns about the effect on County records custodians of § 505 on the availability of denials under the MPIA have continued to reverberate throughout Montgomery County government. In a memorandum dated 14 July 2000, the County Attorney urged the Montgomery County Council to "consider proposing" an amendment to § 505 "so that there is no question that" it "should be interpreted in a manner consistent with the [MPIA]." Memorandum from the Office of the County Attorney for Montgomery County, Maryland, to the County Council for Montgomery County, Maryland, p. 1 (14 July 2000) ("*2000 Memo*"). In so doing, the County Attorney correctly observed that "the weight of [§ ] 505's legislative history coupled with the policy of the [MPIA] favoring disclosure (except with regard to private information about an individual) could well lead a court to conclude that [§ ] 505 prevents county custodians from utilizing the permissible denials under the [MPIA], including the attorney-client privilege." *2000 Memo*, p. 4.

Following distribution of that memorandum, an amendment to § 505 was introduced by the Montgomery County Council for intended inclusion on the 2000 general election ballot. *See Proposed Amendments to Montgomery County Charter and Ballot Titles*, County Council for Montgomery County, Maryland, Resolution No. 14 (18 July 2000). The proposed amendment to § 505 would have provided that:

[a]ny person shall have the right to inspect any document *held by County government*, except confidential police records, personnel records, records of a confidential private nature as defined by law, *or records that may be exempted from disclosure under the state Public Information Act or other applicable state or federal law.* The Council may adopt reasonable regulations for such inspection. A certified copy of any such document shall be furnished upon payment of a reasonable fee established by such regulations. This section shall not apply to a document or other material

obtained or prepared in anticipation of litigation or for use in legal proceedings to which the County is a party.

(Emphasis added to indicate the added language). For reasons not apparent on the record before us, the proposed amendment to the Charter was withdrawn before final legislative action. Although the County Council's failure to pursue the amendment is not "an infallible indication" of the Council's original intent in enacting § 505, *NCR Corp.*, 313 Md. at 125, 544 A.2d at 767, the plain language of the proposal and the discussion surrounding its introduction leave no doubt that the County was aware that § 505 was susceptible to being interpreted as waiving the permissive denials permitted under the MPIA.

In addition, while " 'we have never held that the amendment-rejection theory is a completely determinative method of ascertaining legislative intent, we have indicated that such action strengthens the conclusion that the Legislature did not intend to achieve the results that the amendment would have achieved, if adopted.' " *State v. Bell*, 351 Md. at 721, 720 A.2d at 317 (quoting *Demory Bros.*, 273 Md. at 326, 329 A.2d at 677) (citing, in part, *NCR Corp.*, 313 Md. at 125, 544 A.2d at 767 ("While a committee's rejection of an amendment is clearly not an infallible indication of legislative intent, it may help our understanding of overall legislative history.")). Thus, in this case, where the County Council introduced a proposed amendment to exempt "records that may be exempted from disclosure under the state Public Information Act or other applicable state or federal law" from public inspection and subsequently withdrew the proposal from consideration, we are left to conclude that the County Council intended that its public information provision not be limited by the MPIA. While we do not mistrust the sincerity of Montgomery County's current desire to prevent more liberal access to its public records, we will not tailor our interpretation of § 505 to account for the County's failure to effectuate that desire itself.

Respondents maintain that we should avoid interpreting § 505 as waiving the permissive denials and waivable privileges recognized by the MPIA because such an interpretation

would conflict with Montgomery County Charter, § 209. That section provides that:

> [t]he County Executive shall provide the Council with any information concerning the Executive Branch that the Council may require for the exercise of its powers.

Specifically, Respondents maintain that § 209 provides the County Council with "limited access to information." A review of the legislative history of that section reveals, however, that § 209 effectuates the opposite result.

Prior to 1968, the legislative and executive powers in Montgomery County were vested in the County Council. *See* Montgomery County Charter, Art. II, § 1 (1965) ("The legislative branch of the county government shall be composed of the county council in legislative session and the officers and employees thereof."); Montgomery County Charter, Art. III, § 1 (1965) ("The executive branch of the county government shall be composed of the county council in executive session, the county manager, the heads of the several departments of county government, the county personnel board, the office of the county attorney, and other administrative agencies of the county government."). In 1968, the current Montgomery County Charter was enacted to "achieve[ ] a union of political leadership and professional administration" by providing "a full-time elected County Executive to be the chief executive of the County" and maintaining the County Council as "the County's legislative body performing the legislative functions it now performs in both legislative session and executive session." *1968 Commentary Upon Proposed Charter,* Charter Review Commission (Committee on Style), Introduction (10 July 1968). As part of the new enactment, § 209 and § 505 were created. As described in the 1968 "Commentary Upon Proposed Charter" prepared by the Charter Review Commission, § 209,

> permits the Council to require the County Executive to furnish information. This provision is in contrast to the situation in the Federal government where under the doctrine of executive privilege the President may refuse to furnish information which he does not consider should be

available to Congress. It is considered that the Council should have the authority to obtain from the County Executive such information as it requires for the exercise of its powers.

*1968 Commentary Upon Proposed Charter,* Charter Review Commission (Committee on Style), p. 21 (10 July 1968).

Contrary to Respondents argument that § 209 limits the County Council's ability to obtain certain information from the County Executive, the commentary of the Charter Review Commission suggests that § 209 expressly preserves the County Council's access to information by waiving the County Executive's ability to invoke his or her executive privilege to withhold documents. As evidenced by the commentary, although the County Council acquiesced in the transfer of the executive powers under the new Charter, it endeavored to retain, at least to some degree, direct access to information held by the County Executive. Thus, rather than conflicting with our construction of § 505, this section comports with and lends support to our holding that § 505 was intended to provide greater public access than the MPIA.

In conclusion, based on our interpretation of § 505, the Circuit Court erred in concluding that the Ethics Commission properly withheld one document as a deliberative interagency memorandum under the permissible inter-agency/intra-agency document exemption, *see* MPIA § 10–618(b). In addition, insofar as they individually were not "obtained or prepared in anticipation of litigation or for use in legal proceedings to which the County is a party," *see* § 505, the Circuit Court also erred in its determination that four documents were withheld properly by the Board pursuant to its attorney-client privilege. As a result of these erroneous rulings, the Circuit Court's determination of whether to award counsel fees and costs [22] may have been affected. For that

---

**22.** Petitioner's additional requests in the Circuit Court action for actual and punitive damages are not addressed in this opinion because the certiorari question was directed solely to attorneys' fees and costs. *See* MPIA § 10–623(d) ("A defendant governmental unit is liable to the

reason, we shall reverse the judgment of the Court of Special Appeals and direct it to remand this case to the Circuit Court for further consideration.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY, AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; RESPONDENTS TO PAY THE COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.*

complainant for actual damages and any punitive damages that the court considers appropriate if the court finds that any defendant knowingly and wilfully failed to disclose or fully to disclose a public record that the complainant was entitled to inspect under this Part III of this subtitle.").